THE HONORABLE RICARDO S. MARTINEZ
THE HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FLI-LO FALCON, LLC, STEEL CITY
EAGLES, CORP., and STELVIO
TRANSPORT LLC on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC. and AMAZON
LOGISTICS, INC.,

Defendants.

Case No.: 2:22-cv-00441-RSM-MLP

**DEFENDANTS' MOTION TO COMPEL
ARBITRATION**

**NOTE ON MOTION CALENDAR:**
August 5, 2022

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ...........................................................................................................1

II.  BACKGROUND ...........................................................................................................1

III.  ARGUMENT ................................................................................................................4

    A.  The Agreement Contains A Valid Agreement To Arbitrate. .......................5

        1.  The Agreement Is Enforceable Under The FAA. ............................5

        2.  The FAA Exemption For Transportation Workers Is Inapplicable. .................................................................................7

        3.  The Agreement Is Also Enforceable Under Washington Law. .............................................................................................8

        4.  The Agreement Is Not Illusory. .....................................................11

        5.  Fraudulent Inducement Does Not Invalidate The Arbitration Agreement. .................................................................12

    B.  The Agreement Delegates Threshold Questions Of Arbitrability To The Arbitrator. ...........................................................................................13

    C.  Even If The Court Were To Decide Arbitrability, Plaintiffs' Claims Are Covered By The Arbitration Agreement ...............................................13

    D.  Plaintiffs Are Estopped From Avoiding Arbitration With Amazon.com. ...............................................................................................16

IV.  THE ACTION MUST BE DISMISSED OR STAYED SO THAT THE DISPUTE MAY PROCEED TO ARBITRATION. .............................................17

**TABLE OF AUTHORITIES**

CASES                                                                                                    PAGE(S)

*Adams v. Parts Distribution Xpress, Inc.*,
   No. 2:20-cv-00697-JMG, 2021 WL 1088231 (E.D. Pa. Mar. 22, 2021)...................................9

*Akrami v. ABC Phones of N. Carolina, Inc.*,
   No. 2:19-cv-02547-JLS-JDE, 2019 WL 6998776 (C.D. Cal. Nov. 27, 2019) ......................10

*Alaska Protein Recovery, LLC v. Puretek Corp.*,
   No. C13-1429, 2014 WL 2011235 (W.D. Wash. May 16, 2014)...........................................15

*Allison v. Medicab Int'l, Inc.*,
   92 Wn.2d 199 (1979)...............................................................................................................15

*Amos v. Amazon Logistics, Inc.*,
   No. 1:22-CV-55, *Memorandum Opinion and Order* (M.D. N.C. June 16,
   2022) ..........................................................................................................................1, 2, 9, 11

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)...........................................................................................................5, 10

*AT&T Techs., Inc. v. Commc'n Workers of Am.*,
   475 U.S. 643 (1986) ...............................................................................................................14

*Bldg. Materials and Const. Teamsters Local No. 216 v. Granite Rock Co.*,
   851 F.2d 1190 (9th Cir. 1988) ...............................................................................................15

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) .............................................................................................4, 7

*Browning v. 24 Hour Fitness, Inc.*,
   No. C05-5732RBL, 2006 WL 151933 (W.D. Wash. Jan. 19, 2006)........................................11

*Carter v. Rent-A-Ctr., Inc.*,
   718 F. App'x 502 (9th Cir. 2017) ...........................................................................................10

*Castillo v. Cava Mezze Grill, LLC*,
   No. CV 18-7994-MWF, 2018 WL 7501263 (C.D. Cal. Dec. 21, 2018) ................................10

*Chastain v. Union Sec. Life Ins. Co.*,
   502 F. Supp. 2d 1072 (C.D. Cal. 2007) .................................................................................16

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .................................................................................................4

*CixxFive Concepts, LLC v. Getty Images, Inc.*,
   No. C19-386-RSL, 2020 WL 3798926 (W.D. Wash. July 7, 2020)........................................15

*D.V.C. Trucking, Inc. v. RMX Global Logistics, Inc.*,
   No. Civ. A 05-CV-00705, 2005 WL 2044848 (D. Colo. Aug. 24, 2005) ...............................8

*David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. LLC*,
   13 Wn. App. 2d 159, 168-69 (2020)...................................................................................14, 17

# TABLE OF AUTHORITIES
### (Continued)

**CASES**                                                               **PAGE(S)**

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) .................................................................................6

*Ekin v. Amazon Servs.*,
   LLC, No. C14-0244-JCC, 2015 WL 11233144 (W.D. Wash. Feb. 10, 2015) ......................11

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) .................................................................................6

*Fisher Props., Inc. v. Arden-Mayfair, Inc.*,
   106 Wn.2d 826 (1986) ................................................................................6

*Grigson v. Creative Artists Agency L.L.C.*,
   210 F.3d 524 (5th Cir. 2000) .................................................................16, 17

*Harper v. Amazon.com Servs., Inc.*,
   12 F.4th 287 (3d Cir. 2021) .........................................................................9

*Hearst Commc'ns, Inc. v. Seattle Times Co.*,
   154 Wn.2d 493 (2005) ................................................................................6

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S. Ct. 524 (2019) ..............................................................................13

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ...................................................................................4

*In re Jean F. Gardner Amended Blind Trust*,
   117 Wn. App. 235, 70 P.3d 168 (2003) ...............................................................14

*In re Marriage of Pascale*,
   173 Wn. App. 836 (2013) .............................................................................9

*JC Aviation Invests., LLC v. Hytech Power, LLC*,
   No. 81539-3-I, 2021 WL 778043 (Wn. App. Div. I, Mar. 1, 2021) .....................................14

*Knudtson v. AT&T, Inc.*,
   No. C09-837RSM, 2010 WL 11682487 (W.D. Wash. Mar. 1, 2010) .......................................10

*McKee v. AT & T Corp.*,
   164 Wn.2d 372 (2008) ...............................................................................10

*Mendez v. Palm Harbor Homes, Inc.*,
   111 Wn. App. 446 (2002) .........................................................................14, 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ...............................................................................6, 14

*Mortensen v. Bresnan Commc'ns LLC*,
   722 F.3d 1151 (9th Cir. 2013) ........................................................................5

MOTION TO COMPEL ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP
- iii -
FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

# TABLE OF AUTHORITIES
### (CONTINUED)

CASES                                                                                                   PAGE(S)

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ....................................................................................................5

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) ................................................................................6

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) ..............................................................................12

*New Prime, Inc. v. Oliveira*,
    139 S. Ct. 532 (2019) .............................................................................................8

*Norcia v. Samsung Telecomm. Am.*,
    LLC, 845 F.3d 1279 (9th Cir. 2017) ......................................................................6

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ..............................................................................13

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3d Cir. 2004).....................................................................................9

*Perry v. Thomas*,
    482 U.S. 483 (1987).................................................................................................5

*Peters v. Amazon Services, LLC*,
    2 F. Supp. 3d 1165 (W.D. Wash. 2013) ..............................................................6, 7

*Pinkis v. Network Cinema Corp.*,
    9 Wn. App. 337 (1973) ......................................................................................12, 15

*Precision Husky Corp. v. Mountain Equip., Inc.*,
    No. 53054-2-I, 2004 WL 2699920 (Wn. App. Div. I, Nov. 29, 2004)...................14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967).........................................................................................12, 15

*R&C Oilfield Servs., LLC, v. American Wind Transp. Grp., LLC*,
    447 F. Supp. 3d 339 (W.D. Pa. 2020).....................................................................8

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)...................................................................................................4

*Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermkt., Inc.*,
    96 Wn.2d 939 (1982) ...............................................................................................6

*Riensche v. Cingular Wireless, LLC*,
    No. C06-1325Z, 2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ..........................7

*Romero v. Watkins and Shepard Trucking, Inc.*,
    No. 20-55768, 2021 WL 3675074 (9th Cir. Aug. 20, 2021) ...................................9

# TABLE OF AUTHORITIES
### (CONTINUED)

**CASES**                                                                                           **PAGE(S)**

*Scott v. Cingular Wireless*,
  160 Wn.2d 843 (2007) ................................................................................................9, 10

*Sellman v. Boehringer Ingelheim Pharms. Inc.*,
  No. C21-1105-JCC, 2021 WL 4989448 (W.D. Wash. Oct. 27, 2021) ...................................12

*Southwest Airlines Co. v. Saxon*,
  596 U.S. ___ (2022) (Slip Op. ) ...................................................................................8

*Staley v. Gilead Scis., Inc.*,
  No. 19-CV-02573-EMC, 2021 WL 4972628 (N.D. Cal. Mar. 12, 2021) ...............................16

*State Dep't of Corr. v. Fluor Daniel, Inc.*,
  160 Wn.2d 786 (2007) .................................................................................................7

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
  925 F.2d 1136 (9th Cir. 1991) ......................................................................................12

*Triton Transp., LLC v. Amazon Logistics, Inc.*,
  No. 21-cv-41524, *Order on Motion to Compel Arbitration* (Or. Cir. Mar. 31,
  2022) ..........................................................................................................................1, 9

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ..................................................................................11

*Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*,
  122 Wn.2d 371 (1993) ..................................................................................................6

**STATUTES**

9 U.S.C. § 2 ....................................................................................................................4

9 U.S.C. § 3 ...................................................................................................................17

9 U.S.C. § 4 ....................................................................................................................4

RCW § 7.04A.060 ........................................................................................................4, 9

RCW § 7.04A.070 ...................................................................................................4, 9, 17

Washington Consumer Protection Act ....................................................................3, 14, 15

Washington Franchise Investment Protection Act ..........................................................3, 15

**OTHER AUTHORITIES**

American Arbitration Association, Commercial Arbitration Rules and Mediation
  Procedures (2013) .......................................................................................................13

## I.     INTRODUCTION

Under well-settled law, this case is subject to arbitration, not litigation in this Court. Each of the Plaintiffs entered into a Delivery Service Partner Program Agreement ("Agreement") with Defendant Amazon Logistics, Inc.  The Agreement mandates that the parties must resolve any disputes arising out of the Agreement through arbitration.  Ignoring the Agreement and its arbitration requirement, Plaintiffs now seek to pursue a class action lawsuit against Amazon in the wrong forum.

Plaintiffs' assent to the Agreement and its binding arbitration provision bars this lawsuit. The Federal Arbitration Act ("FAA") requires the Court to dismiss or stay this action until the dispute is resolved by an arbitrator.  And Washington state law provides a further, independent basis for either dismissing or staying this action pending arbitration.  Plaintiffs concede that the Agreement is valid and enforceable, and in fact invoke and rely on the Agreement to assert claims under Washington law and for breach of the Agreement itself and the implied covenant of good faith and fair dealing.  Nevertheless, Plaintiffs simultaneously try to disavow and defy their contractual commitment to arbitrate this dispute.  That attempt to avoid arbitration fails.  Courts have considered the enforceability of the very arbitration clause at issue here and have compelled arbitration of the same causes of action.  *See* Buckley Declaration ("Buckley Decl.") Ex. A (*Triton Transp., LLC v. Amazon Logistics, Inc.*, No. 21-cv-41524, *Order on Motion to Compel Arbitration* (Or. Cir. Mar. 31, 2022)), Ex. B (*Amos v. Amazon Logistics, Inc.,* No. 1:22-CV-55, *Memorandum Opinion and Order* (M.D. N.C. June 16, 2022.))

Amazon respectfully requests that the Court order Plaintiffs to comply with the Agreement, compel Plaintiffs to arbitrate their claims individually as they agreed to do, and dismiss or stay this action pending the outcome of the arbitration proceeding.  Plaintiffs will lose nothing in that process, because they can pursue in arbitration the same claims they seek to assert in this lawsuit.

## II.     BACKGROUND

Amazon is a retailer that offers a wide selection of products, some for sale directly from amazon.com and some for sale from millions of third-party sellers.  Declaration of Micah

McCabe in Support of Defendants' Motion to Compel Arbitration ("McCabe Decl.") ¶ 3. Amazon Logistics coordinates the movement and warehousing of products, equipment and supplies within Amazon's own facilities, and coordinates Amazon's external relationships with third parties that provide local delivery services.  *Id.*  Through the Delivery Service Partner ("DSP") Program, Amazon Logistics contracts with independently owned businesses like Plaintiffs to provide local delivery services in specific geographic areas.  *Id.* ¶¶ 3-4.

Fli-Lo Falcon, LLC ("Fli-Lo Falcon") and Steel City Eagles, Corp ("Steel City") are former DSPs operating in Wyoming and Pennsylvania, respectively.  Amended Complaint ("Compl.") ¶¶ 15-16.  Fli-Lo Falcon entered the Agreement on October 25, 2019.  *Id.*; McCabe Decl. ¶ 5.  Steel City entered the Agreement on May 13, 2019.  *Id.* ¶ 6.

Stelvio Transport LLC ("Stelvio") is a current DSP operating in California.  Compl. ¶ 17. Stelvio first contracted with Amazon to deliver packages as part of Amazon's DSP 1.0 Program (the predecessor to the current DSP 2.0 Program) in 2017.  *Id.* ¶¶ 17, 27.  Stelvio joined the DSP 2.0 Program by executing the Agreement on July 27, 2018.  McCabe Decl. ¶ 7.

When DSPs, including the Plaintiffs, join the DSP 2.0 Program, they review and execute the Agreement, which defines the parties' respective rights and obligations under the Program. McCabe Decl. ¶¶ 4-9; Ex. A (Agreement between Fli-Lo Falcon and Amazon Logistics), Ex. B (Agreement between Steel City and Amazon Logistics, and Stelvio and Amazon Logistics).  Fli-Lo Falcon, Steel City, and Stelvio were provided a copy of the Agreement for their review prior to execution.  *See id.* ¶¶ 4, 7.

The Agreement includes a broad, unequivocal arbitration clause that requires the parties to arbitrate all disputes arising out of the Agreement:

> This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal law, and Washington state law, without reference to any applicable conflict of laws rules.  ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.  There is no judge or jury in arbitration, and court review of an arbitration award is limited.  However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would.

1  McCabe Decl. Ex. A § 13, Ex. B § 13 (emphasis in original)

2       The Agreement also requires the parties arbitrate all disputes before the AAA, under the

3  AAA rules:

4       **The arbitration will be conducted by the American Arbitration Association
   (the "AAA") under its rules, including the AAA's Commercial Arbitration**

5       **Rules.** … YOUR COMPANY AND AMAZON EACH AGREE THAT ANY

6       DISPUTE RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY
   ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED, OR

7       REPRESENTATIVE ACTION. If for any reason a claim proceeds in court rather
   than in arbitration, your company and Amazon each waive any right to a jury trial.

8

9  *Id.* (capitalization in original; bold added).

10       On March 31, 2021, Amazon's Agreement with Fli-Lo Falcon expired by its terms and

11  Amazon chose not to renew it, as it had an absolute right to do.  McCabe Decl. ¶ 11, Ex. A

12  §§ 1(a); 6(a).  On April 5, 2022, in defiance of its contractual obligation to arbitrate, Fli-Lo

13  Falcon filed this lawsuit.  On April 12, 2022, Amazon terminated the Agreement with Steel City

14  following its repeated material breaches of the Agreement.  McCabe Decl. ¶ 12.  On May 20,

15  2022, Plaintiffs filed the Amended Complaint, and Steel City and Stelvio joined as Plaintiffs in

16  the action.

17       The Amended Complaint purports to assert, on behalf of a nationwide class, claims for

18  (1) breach of the Agreement; (2) fraud arising from representations in the DSP Program

19  marketing materials and the Agreement; (3) fraudulent inducement; (4) breach of the implied

20  covenant of good faith and fair dealing in the Agreement; (5) unjust enrichment; (6) violation of

21  the Washington Consumer Protection Act ("CPA") and the Washington Franchise Investment

22  Protection Act ("FIPA"), contending that the DSP Program and the Agreement created a

23  franchise; (7) injunctive relief; and (8) declaratory relief.  Compl. ¶¶ 145-99.

24       There can be no genuine dispute that these claims directly arise out of the parties' rights

25  and obligations under the Agreement.  There would be no relationship between Plaintiffs and

26  Amazon, and there could be no dispute between them, but for the Agreement.  Indeed, Plaintiffs

27  acknowledge that their claims arise out of the Agreement.  *See, e.g.,* Compl. ¶ 10 ("Pursuant to

28  the DSP Agreement, the Parties have consented to the application of Washington law."); ¶ 136

1   ("Plaintiffs and the members of the Class sustained damages due to Defendants' violations of

2   law alleged herein, which *arise out of Defendants' common course of conduct in connection*

3   *with a standard, common DSP Agreement*, and standard, common marketing materials")

4   (emphasis added).

5   **III.   ARGUMENT**

6          The Agreement specifies that it is governed by the FAA and Washington state law.

7   McCabe Decl. Ex. A § 13, Ex. B § 13.  Under the FAA and Washington law, written agreements

8   to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

9   equity for the revocation of any contract."  9 U.S.C. § 2; *see* RCW § 7.04A.060.  A party faced

10  with a refusal or failure to arbitrate as required under a written agreement may petition the court

11  for an order compelling arbitration.  9 U.S.C. § 4; RCW § 7.04A.070.  The FAA requires courts

12  to compel arbitration "in accordance with the terms of the agreement" upon such motion of

13  either party, consistent with the principle that arbitration is a matter of contract.  9 U.S.C. § 4.

14  Washington law similarly requires a court to order the parties to arbitrate once the court finds

15  that there is an enforceable agreement to arbitrate.  RCW § 7.04A.070.

16         In determining whether to compel arbitration, normally only two "gateway" issues need

17  to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and

18  (2) whether the agreement covers the dispute.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S.

19  79, 83-85 (2002); *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir.

20  2000).  But when the parties have clearly and unmistakably delegated questions regarding

21  arbitrability to the arbitrator, the Court need not reach the second inquiry.  *See Rent-A-Ctr., W.,*

22  *Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.

23  2015).  Importantly, under Ninth Circuit law, "incorporation of the AAA rules constitutes clear

24  and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  *Brennan*,

25  796 F.3d at 1130.

26         As addressed below, Plaintiffs and Amazon plainly entered into valid agreements to

27  arbitrate.  By invoking and incorporating the AAA and its rules, the parties' agreements also

28  clearly and unmistakably delegate questions of arbitrability to the arbitrator.  That ends the

inquiry here; if Plaintiffs intend to challenge whether their claims or this dispute are subject to the arbitration clause, they must do so before the arbitrator.  But even if, contrary to Ninth Circuit law, the Court were to consider that issue, Plaintiffs' claims fall squarely within the scope of the arbitration clause.

### A.    The Agreement Contains A Valid Agreement To Arbitrate.

Plaintiffs had clear notice of and expressly agreed to the arbitration provisions in the Agreement, which are governed by "the United States Federal Arbitration Act, applicable United States federal law, and Washington state law."  *See* McCabe Decl. Ex. A § 13, Ex. B § 13. Plaintiffs do not dispute, but in fact admit, the existence of a valid contract.  *See, e.g.*, Compl. ¶ 17 ("[the] 2.0 DSP Agreement … currently governs the Parties' relationship today"); ¶ 32 ("Whitfield, Wiles and Omar each executed a DSP Agreement on behalf of their companies with ALI …").  Both the FAA and Washington law strongly favor arbitration where, as here, there is evidence of assent to a valid agreement.  And both federal law and Washington law independently compel enforcement of the parties' arbitration agreement.

### 1.    The Agreement Is Enforceable Under The FAA.

Pursuant to the Agreement's express terms, the FAA governs the Agreement, including the arbitration provisions.  McCabe Decl. Ex. A § 13, Ex. B § 13.  As the U.S. Supreme Court has affirmed, the FAA declares a liberal policy favoring enforcement of arbitration provisions. *See e.g.*, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2). But the FAA does not simply place arbitration agreements on equal footing with other contracts; instead, it "***favor[s]*** arbitration agreements."  *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added); *see also, e.g.*, *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) ("[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions.").

The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotation marks and citation omitted).  If an agreement exists, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Courts apply state-law principles of contract formation to determine whether parties assented to an agreement to arbitrate.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Norcia*, 845 F.3d at 1283.  Thus, the Court should determine the validity of the arbitration agreement under "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).  In Washington, "[t]he role of the court is to determine the mutual intentions of the contracting parties according to the reasonable meaning of their words and acts." *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 837 (1986).  Thus, the court must attempt to ascertain the intent of the parties based on objective manifestations of the agreement and the reasonable meaning of the words used in the contract.  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005).

"The proponent of a contract need only prove the existence of the contract and the other party's objective manifestation of intent to be bound thereby; the unexpressed subjective intent of either party is irrelevant." *Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermkt., Inc.*, 96 Wn.2d 939, 944 (1982).  A party's signature is evidence that the party intended to be bound.  *See Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 389 (1993).  Contracts formed online, where a party agrees to the contract terms through the click of a button, are enforceable like any other contract.  *See e.g., Peters v. Amazon Services,*

*LLC*, 2 F. Supp. 3d 1165, 1170 (W.D. Wash. 2013); *Riensche v. Cingular Wireless, LLC*, No. C06-1325Z, 2006 WL 3827477, at *2 (W.D. Wash. Dec. 27, 2006) (compelling arbitration where the plaintiff "was required to agree to the Terms online"). "In interpreting an arbitration clause, the intentions of the parties as expressed in the agreement controls, but 'those intentions are generously construed as to issues of arbitrability.'" *Peters*, 2 F. Supp. 3d at 1170 (quoting *W.A. Botting Plumbing and Heating Co. v. Constructors-Pamco*, 47 Wn. App. 681, 684 (1987)).

Here, there is no dispute that Plaintiffs agreed to the Agreement or the arbitration clause. Plaintiffs concede in their Amended Complaint that the contract is valid and enforceable and, indeed, bring their own claims predicated on the validity of the contract. *See, e.g.*, Compl. ¶¶ 32, 37, 41. The Agreement clearly states that "ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT." McCabe Decl. Ex. A § 13, Ex. B § 13 (emphasis in original). This unambiguous language cannot reasonably be construed as anything other than a valid agreement to arbitrate, as numerous courts applying Washington law have recognized and as mandated by the FAA. And the Court need look no further than this language to determine the existence of an agreement to arbitrate. *See State Dep't of Corr. v. Fluor Daniel, Inc.,* 160 Wn.2d 786, 795 (2007) (courts must "carry out the intent of the parties as manifested … by the parties' own contract language.").

As discussed further below, that ends the inquiry. Under well-established Ninth Circuit law, when there is a valid arbitration agreement that delegates authority to the arbitrator, all further questions—including whether the arbitration clause encompasses the dispute in question—must be decided by the arbitrator, not by a court. *Brennan*, 796 F.3d at 1130.

### 2.    The FAA Exemption For Transportation Workers Is Inapplicable.

Plaintiffs apparently intend to try to avoid their contractual arbitration obligation by invoking the FAA's transportation worker exemption. *See* Joint Status Report, Dkt. No. 28 at 2-3. Section 1 of the FAA provides a narrow exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This very limited exemption plainly does not apply to the Agreement between

Amazon and Plaintiffs, which are independently owned and operated businesses that entered into a commercial contract to fulfill delivery orders.

The express language of FAA Section 1 limits the application of the exemption to "contracts of employment." *Id.*  In *New Prime, Inc. v. Oliveira*, the Supreme Court held that, as used in Section 1, "contracts of employment" means "any contract for the performance of work by workers."  139 S. Ct. 532, 541 (2019); *accord Southwest Airlines Co. v. Saxon*, 596 U.S. ___ , ___ (2022) (Slip Op. at 4).  A "contract of employment" must be a contract of employment of individual "workers", and not an agreement between two business entities.  *See* 9 U.S.C. § 1 (the exemption applies to "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"); *D.V.C. Trucking, Inc. v. RMX Global Logistics, Inc.*, No. Civ. A 05-CV-00705, 2005 WL 2044848, at *3 (D. Colo. Aug. 24, 2005) (a corporation was not a "transportation worker," and the contract between two companies was an "arm's length business contract for carrier services," not an employment contract); *R&C Oilfield Servs., LLC, v. American Wind Transp. Grp., LLC*, 447 F. Supp. 3d 339, 347 (W.D. Pa. 2020) ("The Agreement here is a commercial contract between two business entities.  It cannot reasonably be construed as a contract of employment governing 'work by workers.'").

The Agreement here is not a contract of employment, but rather a commercial contract between Plaintiffs, self-described transportation and logistics companies, and Amazon, a corporation, for the commercial delivery of goods.  *See* Compl. ¶¶ 15-17 (describing each of the Plaintiffs as "a transportation and logistics company, which entered into a contract to deliver packages for ALI").  Accordingly, the Agreement governs a transactional commercial relationship between two business entities, whereby each of the Plaintiffs was to provide delivery services for Amazon.    As such, the exemption does not apply here.  *See* 9 U.S.C. § 1; *D.V.C. Trucking,* 2005 WL 2044848, at *3 (D. Colo. 2005)*; R&C Oilfield Servs.,* F. Supp. 3d at 347 (W.D. Pa. 2020).

**3.    The Agreement Is Also Enforceable Under Washington Law.**

Where, as here, an arbitration clause is governed by both federal and state law, the state law mandated in a choice-of-law provision provides an independent basis for compelling

arbitration, even if an FAA exemption otherwise applies.  *See e.g., Romero v. Watkins and Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *2-3 (9th Cir. Aug. 20, 2021) (compelling arbitration of employee's claims pursuant to Nevada law, where contract subject to exemption from FAA provided for the application of Nevada law*); Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (holding that the FAA-exempted agreement to arbitrate could still be subject to arbitration pursuant to Washington state law); *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021) (same).  In fact, courts may compel arbitration under state law without deciding whether the FAA exemption applies at all.  *See, e.g.*, *Adams v. Parts Distribution Xpress, Inc.*, No. 2:20-cv-00697-JMG, 2021 WL 1088231, at *4 (E.D. Pa. Mar. 22, 2021).  Specifically, without ever deciding whether the FAA applied, other courts have compelled arbitration under Washington state law under DSP agreements identical to the Agreement here at issue here.  Buckley Decl. Ex. A (*Triton Transp., LLC v. Amazon Logistics, Inc.*, No. 21-cv-41524, *Order on Motion to Compel Arbitration* (Or. Cir. Mar. 31, 2022)) at 10, Ex. B (*Amos v. Amazon Logistics, Inc.,* No. 1:22-CV-55, *Memorandum Opinion and Order* (M.D. N.C. June 16, 2022)) (same).

The Agreement provides that it is governed not only by the FAA but also by "Washington state law."  McCabe Decl. Ex. A § 13, Ex. B § 13.  Washington state law provides that valid arbitration agreements must be enforced.  RCW §§ 7.04A.060, 7.04A.070. Washington courts likewise favor arbitration.  *See, e.g., In re Marriage of Pascale*, 173 Wn. App. 836, 842 (2013) (noting courts should resolve all doubts as to the application of an arbitration clause to a particular dispute in favor of arbitration).  As set forth above, the Agreement is a valid contract that requires all disputes arising from it to be arbitrated. Consequently, Washington law provides an independent and sufficient basis for this Court to compel arbitration.

Plaintiffs evidently also plan to argue that "the arbitration clause is unconscionable under Washington state law because it contains a class action waiver."  *See* Joint Status Report, Dkt. No. 28 at 2-3.  That argument must fail.  As an initial matter, Washington does not recognize any blanket prohibition on class action waivers in arbitration clauses.  *Scott v. Cingular Wireless*, 160

Wn.2d 843, 860 at n 7 (2007) ("whether any particular class action waiver is unenforceable will turn on the facts of the particular case"); *Knudtson v. AT&T, Inc.*, No. C09-837RSM, 2010 WL 11682487, at *2 (W.D. Wash. Mar. 1, 2010) ("there is no per se ban on a class-action waiver [in arbitration agreements].").  Moreover, the circumstances where Washington courts have found unconscionable arbitration clauses with class action waivers mostly have been limited to consumer class actions; courts have struck down class action waivers on the grounds that the availability of class proceedings is necessary for *consumers* to vindicate their rights in connection with *claims that are too small to pursue on an individual basis. See, e.g., Scott* at 852 ("when consumer claims are small but numerous, a class-based remedy is the only effective method to vindicate the public's rights"); *McKee v. AT & T Corp.*, 164 Wn.2d 372, 396-97 (2008) ("when wrongs are small but widespread, class actions are often the only effective way to address them").

This is not a consumer class action.  Plaintiffs are self-described transportation and logistics companies and do not lack an effective method to vindicate their rights.  Plaintiffs agreed to resolve any claims arising out of their commercial agreements with Amazon exclusively on an individual basis through arbitration.  *See* McCabe Decl. Ex. A. § 13, Ex. B. § 13.  In such circumstances, waivers—and arbitration agreements containing such waivers—are valid and must be enforced.  *See, e.g., Carter v. Rent-A-Ctr., Inc.,* 718 F. App'x 502, 504 (9th Cir. 2017) (affirming decision to compel arbitration on an individual basis) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)); *Akrami v. ABC Phones of N. Carolina, Inc.*, No. 2:19-cv-02547-JLS-JDE, 2019 WL 6998776, at *2 (C.D. Cal. Nov. 27, 2019) (dismissing class claims where arbitration agreement contained a class action waiver); *Castillo v. Cava Mezze Grill, LLC*, No. CV 18-7994-MWF, 2018 WL 7501263, at *4 (C.D. Cal. Dec. 21, 2018) ("[A]greements to waive class procedures are enforceable") (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619, 1632 (2018)).  Plaintiffs are sophisticated business entities that made a conscious business choice to forego any right to pursue a class action; there is no basis for the Court to relieve them from that contractual choice, and Plaintiffs are free to pursue their claims and to attempt to vindicate their rights through the arbitration process.

### 4.    The Agreement Is Not Illusory.

Plaintiffs apparently also intend to argue that they can sidestep their express obligations to arbitrate these claims on the basis that the Agreement is "illusory" and invalid because it contains a provision allowing Amazon to modify the Agreement with notice to the DSPs.[1]  *See* Joint Status Report, Dkt. No. 28 at 2-3; McCabe Decl. Ex. A § 14, Ex. B § 14.  That argument – which seeks to invalidate the very Agreement Plaintiffs base their claims on – fails.

As an initial matter, under Washington law, a party's reservation of its right to amend a contract does not render an arbitration clause in the contract illusory or otherwise unenforceable.  *See, e.g., Wiseley v. Amazon.com, Inc.,* 709 F. App'x 862, 864 (9th Cir. 2017) ("the unilateral modification clause does not render the arbitration provision substantively unconscionable because Amazon is limited by the implied covenant of good faith and fair dealing"); *Browning v. 24 Hour Fitness, Inc.*, No. C05-5732RBL, 2006 WL 151933, at *2 (W.D. Wash. Jan. 19, 2006) (defendant's ability to unilaterally amend contract, including arbitration clause, with notice, "does not lead to the conclusion that the contract lacked consideration or that it is illusory").  Indeed, "neither Washington courts nor the Ninth Circuit have ever held an arbitration agreement unenforceable solely because it is in a contract that allows changes."  *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2015 WL 11233144, at *3 (W.D. Wash. Feb. 10, 2015) (internal quotation omitted).  As such, Amazon's ability to modify the Agreement, with notice to the DSP, does not make the agreement illusory.  *See* McCabe Decl. Ex. A § 14, Ex. B § 14; *see also* Buckley Decl. Ex. B (*Amos v. Amazon Logistics, Inc.,* No. 1:22-CV-55, *Memorandum Opinion and Order* (M.D. N.C. June 16, 2022)) at 7 (finding the arbitration clause in a DSP agreement identical to the Agreement here "not illusory under Washington law.")

Moreover, any argument that the contract is illusory because Amazon can modify it is irrelevant here.  By moving to compel arbitration, Amazon is not seeking to enforce any provision of the Agreement that has ever been amended; the arbitration clause has remained

---

[1]  Oddly, in the Joint Status Report, Plaintiffs also state that they intend to challenge the Agreement on the basis that it "permits Defendants to unilaterally terminate" the Agreement.  But that is plainly wrong.  *Compare* Ex. A § 6(a)(i) (allowing DSP to terminate Agreement "without cause"), *with* § 6(a)(ii) (allowing Amazon to terminate the Agreement in certain enumerated circumstances); and *compare* Ex. B § 6(a)(i) *with* § 6(a)(ii) (same).

unchanged during Plaintiffs' participation in the DSP 2.0 Program.  McCabe Decl. ¶ 10.  Thus, there is nothing "illusory" about the arbitration clause, which has never changed, and Plaintiffs' challenge fails for that reason as well.  *See Sellman v. Boehringer Ingelheim Pharms. Inc.*, No. C21-1105-JCC, 2021 WL 4989448, at *2-3 (W.D. Wash. Oct. 27, 2021) (calling defendant's right to unilaterally modify an agreement "irrelevant because [the defendant] is not seeking to enforce any amended provision of that [agreement]").

### 5. Fraudulent Inducement Does Not Invalidate The Arbitration Agreement.

A claim that a contract was fraudulently induced cannot invalidate an arbitration provision contained within that contract.  In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967), the U.S. Supreme Court held that a claim of fraudulent inducement with respect to a contract containing an arbitration provision should be resolved by arbitration, because it was *not* alleged that the *arbitration provision specifically* was fraudulently induced. Courts within Washington and the Ninth Circuit regularly apply *Prima Paint* and hold that challenges to the validity of a contract as a whole must be referred to and resolved in arbitration where, as here, the contract in question contains an arbitration clause.  *See, e.g.*, *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1263–64 (9th Cir. 2006); *Pinkis v. Network Cinema Corp.*, 9 Wn. App. 337, 342 (1973).

The Complaint here makes no reference whatsoever to the arbitration clause itself. Instead, Plaintiffs claim that, "[h]ad Plaintiffs or members of the Class known the truth about the misrepresentations that were contained in the marketing materials and DSP Agreements, ***neither Plaintiffs nor members of the Class would have signed the contracts*** on the terms offered." Compl. ¶ 163 (emphasis added).  Thus, Plaintiffs claim that they were fraudulently induced to enter into the *Agreement*, *not* the arbitration clause specifically.  That is an argument that must be made to the arbitrator.  *Prima Paint*, 388 U.S. at 404.

**B.** **The Agreement Delegates Threshold Questions Of Arbitrability To The Arbitrator.**

Given that the parties' agreement to arbitrate is valid, that ends the inquiry.  All further questions, including the question of arbitrability of the issues in dispute, must go to the arbitrator.  When a valid agreement exists and delegates arbitrability issues to an arbitrator by "clear and unmistakable" evidence, "a court may not decide the arbitrability issue."  *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529–30 (2019) (quoted and cited sources omitted).  This is true "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is ***wholly groundless***."  *Id.* (emphasis added).  Parties may evidence such "clear and unmistakable" intent to delegate the issue of arbitrability to the arbitrator by expressly incorporating arbitration rules that vest such authority in the arbitrator, such as the Commercial Rules of the American Arbitration Association.  *See* AAA Commercial Arbitration Rules, R-7(a) (arbitrator has authority to rule on "the arbitrability of any claim or counterclaim"), AMERICAN ARBITRATION ASSOCIATION, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES (2013), https://adr.org/sites/default/files/Commercial%20Rules.pdf.  As the Ninth Circuit has observed: "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Oracle Am., Inc. v. Myriad Grp. A.G.,* 724 F.3d 1069, 1074 (9th Cir. 2013).

Here, the Agreement incorporates the AAA Commercial Rules, which vest the authority to determine arbitrability in the arbitrator.  Therefore, the Court must reserve for the arbitrator all remaining questions and issues, including whether Plaintiffs' claims are arbitrable.

**C.** **Even If The Court Were To Decide Arbitrability, Plaintiffs' Claims Are Covered By The Arbitration Agreement.**

The Agreement requires any dispute "arising out of" the Agreement to be arbitrated.  Even if, contrary to Ninth Circuit law, the Court were to address issues of arbitrability and scope, Plaintiffs cannot meet the heavy burden of showing that their claims fall outside the broad scope of the arbitration agreement.

As the Supreme Court has repeatedly recognized, the FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp.* 473 U.S. at 625-26 (claims fall within the scope of broadly defined arbitration provisions if they merely "touch" the matters covered). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).

Consistent with the majority view, Washington also affords broad construction to clauses requiring arbitration of all disputes "arising out of" a contract. Such terms are construed to encompass all claims relating to the agreement, including noncontract claims. *See David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. LLC*, 13 Wn. App. 2d 159, 168-69 (2020) (compelling arbitration of breach of contract, unjust enrichment, fraud, and conversion claims pursuant to similar arbitration clause); *see also JC Aviation Invests., LLC v. Hytech Power, LLC*, No. 81539-3-I, 2021 WL 778043, at *3 n.11 (Wn. App. Div. I, Mar. 1, 2021) ("Clauses requiring arbitration of disputes 'arising out of' are interpreted broadly."). Under Washington law, a valid agreement to arbitrate extends to both statutory claims and claims sounding in tort. *See In re Jean F. Gardner Amended Blind Trust,* 117 Wn. App. 235, 239-40, 70 P.3d 168 (2003) (compelling arbitration of tort claims that "arise from the agreement"); *Mendez v. Palm Harbor Homes, Inc.,* 111 Wn. App. 446, 454 (2002) ("In Washington, it is well settled that [Consumer Protection Act] and other statutory claims are subject to arbitration under the FAA."); *Precision Husky Corp. v. Mountain Equip., Inc.*, No. 53054-2-I, 2004 WL 2699920, at *3 (Wn. App. Div. I, Nov. 29, 2004) ("Parties cannot escape contract arbitration simply by casting their claims in terms of tort.").

Here, all of Plaintiffs' claims are subject to arbitration under the Agreement under settled law, for multiple reasons. <u>First</u>, Plaintiffs' breach of contract claim arises out of the parties' rights and obligations under the Agreement and is subject to arbitration. *See, e.g., David Terry Investments,* 13 Wn. App. 2d at 168-69. <u>Second</u>, Plaintiffs' fraud claim centers on alleged misrepresentations and omissions by Defendants about the DSP Program, *i.e.*, the very subject of

the Agreement.  *Id.*  Third, under settled law, a claim that a party was fraudulently induced into entering a contract is still subject to that contract's mandatory arbitration provision.  *See Prima Paint*, 388 U.S. at 406 (claim that execution of contract was procured by fraud was subject to contract's arbitration provision); *accord Pinkis*, 9 Wn. App. at 345.  Fourth, Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing is arbitrable.  Under settled Washington law, a claim of breach of the implied covenant necessarily requires interpretation of an agreement's express terms and "arises under" the contract.  *See Bldg. Materials and Const. Teamsters Local No. 216 v. Granite Rock Co.,* 851 F.2d 1190, 1193-94 (9th Cir. 1988) (claim of breach of implied covenant "clearly involves the proper interpretation of the agreement" and is subject to arbitration).

Fifth, Plaintiffs' claims for unjust enrichment clearly relate to the underlying Agreement and fall within the broad arbitration clause.  *See, e.g.*, *CixxFive Concepts, LLC v. Getty Images, Inc.*, No. C19-386-RSL, 2020 WL 3798926, at *4 (W.D. Wash. July 7, 2020) (holding claims for unjust enrichment and under CPA "relate to the agreement and fall under the broad language" of a similar arbitration clause).  Sixth, Plaintiffs' claims under FIPA and CPA are likewise subject to mandatory arbitration.  *See Allison v. Medicab Int'l*, Inc., 92 Wn.2d 199, 203-04 (1979) (a violation under FIPA is "simply a controversy 'arising out of or in connection with (the) Agreement' and as such becomes subject to the arbitration agreement enforceable under the federal arbitration act"); *Pinkis*, 9 Wn. App. at 346-47 (affirming order compelling arbitration of FIPA claim); *Mendez,* 111 Wn. App. at 454 ("In Washington, it is well settled that CPA and other statutory claims are subject to arbitration under the FAA.").  Seventh, Plaintiffs' claims for injunctive relief and declaratory judgment arise out of the underlying Agreement and fall within the arbitration agreement, as they deal directly with facts related to the agreement and each party's performance and duties under the agreement.  *See, e.g.*, *Alaska Protein Recovery, LLC v. Puretek Corp.*, No. C13-1429, 2014 WL 2011235, at *4-5 (W.D. Wash. May 16, 2014) (finding declaratory judgment and injunctive relief claims arbitrable where requests "ar[o]se out of or relate[d] to" the agreement).

1    Although it is an issue for the arbitrator to decide, each of these claims clearly arises out

2    of the Agreement upon which this entire dispute is based.  Accordingly, pursuant to the parties'

3    contract, those claims must be arbitrated on an individual basis.

4         **D.    Plaintiffs Are Estopped From Avoiding Arbitration With Amazon.com.**

5    Plaintiffs entered into the Agreement with Amazon Logistics, not with Amazon.com.

6    Plaintiffs might attempt to use that fact to argue that its claims against Amazon.com are not

7    subject to arbitration.  That argument fails.  A signatory to an arbitration agreement is equitably

8    estopped from avoiding arbitration with a non-signatory when either (1) "the signatory to a

9    written agreement containing an arbitration clause must rely on the terms of the written

10   agreement in asserting its claims against the nonsignatory," or (2) "when the signatory to the

11   contract containing an arbitration clause raises allegations of substantially interdependent and

12   concerted misconduct by both the nonsignatory and one or more of the signatories to the

13   contract."  *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000); *see also*

14   *Chastain v. Union Sec. Life Ins. Co.,* 502 F. Supp. 2d 1072, 1081 (C.D. Cal. 2007) ("Plaintiff

15   cannot artfully plead around an arbitration agreement simply by naming a non-signatory

16   defendant who acted in concert with the signatory") (citing *Grigson,* 210 F.3d at 528); *Staley v.*

17   *Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2021 WL 4972628, at *7 (N.D. Cal. Mar. 12, 2021)

18   (citing *Grigson,* 210 F.3d at 527).  Both of those circumstances justifying estoppel apply here.

19   First, Plaintiffs must rely on the terms of the Agreement to assert any of their claims

20   against Amazon.com.  There would be no relationship between any of the Plaintiffs and

21   Amazon, no dispute, and no claims of any sort absent the Agreement and Plaintiffs' participation

22   in the DSP Program under the Agreement.  Plaintiffs expressly rely on the Agreement and its

23   terms to assert claims under Washington law and to assert a contractual claim for breach of

24   contract and breach of the implied covenant of good faith and fair dealing.

25   Second, equitable estoppel applies because Plaintiffs allege substantially interdependent

26   and concerted conduct by Amazon.com and Amazon Logistics, so much so that Plaintiffs do not

27   even bother to differentiate between the two entities in the Amended Complaint.  *See* Compl. at 2

28   (defining Amazon.com as "Amazon" but also defining Amazon.com and Amazon Logistics, Inc.

---

MOTION TO COMPEL ARBITRATION          - 16 -          FENWICK & WEST LLP
CASE NO.: 2:22-CV-00441-RSM-MLP                    1191 SECOND AVENUE, 10TH FLOOR
                                                   SEATTLE, WASHINGTON  98101

collectively as "Amazon"); ¶ 20 (describing Defendants as "agents, affiliates, alter egos, partners, assignees, joint venturers, successors-in-interest or principals of each other"). Consequently, this Court should not allow Plaintiffs to rely on the terms of the Agreement to, on the one hand, hold Amazon.com liable, while, on the other hand, seeking to avoid arbitration with Amazon.com because that specific entity did not sign the Agreement. *See Grigson,* 210 F.3d at 528 (holding that the plaintiff cannot "have it both ways"); *David Terry Invs.,* 13 Wn. App. 2d at 170 (2020) (same).

## IV.     THE ACTION MUST BE DISMISSED OR STAYED SO THAT THE DISPUTE MAY PROCEED TO ARBITRATION.

Defendants respectfully request that the Court dismiss this action, given that all the claims in the Complaint are arbitrable.  Alternatively, Defendants respectfully request that all proceedings in this action be stayed pending completion of arbitration.  Under the FAA, the Court must stay proceedings if it is satisfied that an issue before it is subject to arbitration under an agreement.  9 U.S.C. § 3.  Under Washington law, a stay is equally mandatory.  RCW § 7.04A.070(6).

Dated:  June 17, 2022

Respectfully submitted,

FENWICK & WEST LLP

By: */s/ Brian D. Buckley*
Brian D. Buckley, WSBA No. 26423
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:        206.389.4510
Email:              bbuckley@fenwick.com

Janie Y. Miller (admitted *pro hac vice*)
Sofia Ritala (admitted *pro hac vice*)
Justin A. Stacy (admitted *pro hac vice*)
555 California Street 12th Floor
San Francisco, CA 94104
Telephone:        415.875.2300
Email:              jmiller@fenwick.com
                     sritala@fenwick.com
                     jstacy@fenwick.com

*Attorneys for Defendants*
AMAZON.COM, INC. and AMAZON
LOGISTICS, INC.