1
2

THE HONORABLE RICARDO S. MARTINEZ
THE HONORABLE MICHELLE L. PETERSON

3

4

5

6

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

9   FLI-LO FALCON, LLC, STEEL CITY
10  EAGLES, CORP., and STELVIO
    TRANSPORT LLC on behalf of themselves
    and all others similarly situated,
11
12                        Plaintiffs,

13          v.

14  AMAZON.COM, INC. and AMAZON
    LOGISTICS, INC.,
15
                          Defendants.
16

Case No.: 2:22-cv-00441-RSM-MLP

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

NOTE ON MOTION CALENDAR:
August 5, 2022

ORAL ARGUMENT REQUESTED

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO COMPEL
ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

ARGUMENT .............................................................................................................................3

I.   Defendants Cannot Compel Arbitration Under the FAA Because the DSP Agreement Falls Within Section 1's Exemption for Contracts for Transportation Work ....................................................................................................3

  A.   Plaintiffs Are Engaged in Transportation Work .........................................4

  B.   Plaintiffs' Transportation Work Involves Interstate Commerce.................5

  C.   Defendants' Argument that the FAA's Section 1 Exemption Is Inapplicable Because Its DSPs Are Business Entities Is Meritless ............6

II.   Defendants Cannot Compel Arbitration Under Washington State Law .................9

  A.   Washington Law Is Inapplicable to the Issue of Arbitration ......................9

  B.   Even if Washington Law Governs the Arbitration Provision, the Provision Is Unenforceable Because It Is Unconscionable ......................15

    1.   The Arbitration Provision Is Procedurally Unconscionable ..........16

    2.   The Arbitration Provision Is Substantively Unconscionable.........19

      a.   The Agreement Violates Washington State Public Policy ................................................................................19

      b.   The DSP Agreement Is Shockingly One-Sided.................23

CONCLUSION.........................................................................................................................24

OPPOSITION TO MOTION TO COMPEL           - i -
ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

# TABLE OF AUTHORITIES

**Cases:**

*Adams v. Parts Distrib. Xpress Inc.*,
   No. 20 Civ. 697, 2021 WL 1088231 (E.D. Pa. Mar. 22, 2021) ................................. 15

*Adler v. Fred Lind Manor*,
   153 Wash. 2d 331 (2004)........................................................................................ 16, 18

*Amalgamated Ass'n of St. Elec. Ry & Motor Coach Emps. of Am., Local Div. 1210 v. Pa
Greyhound Lines, Inc.*,
   192 F.2d 310 (3d Cir. 1951)............................................................................................ 7

*Am. Online, Inc. v. Super. Ct.*,
   90 Cal. App. 4th 1 (2001) ............................................................................................ 20

*Amos v. Amazon Logistics, Inc.*,
   No. 22 Civ. 55, ECF No. 25 (M.D.N.C. June 3, 2022)............................................ 14, 15

*Burnett v. Pagliacci Pizza, Inc.*,
   196 Wash. 2d 38 (2020)......................................................................................... *passim*

*Canales v. Lepage Bakeries Park St. LLC*,
   No. 21 Civ. 40065, 2022 WL 952130 (D. Mass. Mar. 30, 2022) ...................... 6, 7, 9

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)................................................................................................ *passim*

*Citizens United v. FEC*,
   558 U.S. 310 (2010)......................................................................................................... 7

*Cornelius v. Alpha Kappa Lambda*,
   19 Wash. App. 2d 862 (2021) ...................................................................................... 16

*Dix v. ICT Grp., Inc.*,
   160 Wash. 2d 826 (2007).............................................................................................. 20

*Fid. Fed. Bank FSB v. Durga Ma Corp.*,
   386 F.3d 1306 (9th Cir. 2004) ............................................................................ 10, 11, 14

*First Nat. Bank of Boston v. Bellotti*,
   435 U.S. 765 (1978)......................................................................................................... 7

*Gandee v. LDL Freedom Enters., Inc.*,
   176 Wash. 2d 598 (2013).............................................................................................. 15

*Godfrey v. Hartford Cas. Ins. Co.*,
   142 Wash. 2d 885 (2001).............................................................................................. 11

*Golden v. O'Melveny & Meyers LLP*,
   No. 14 Civ. 8725, 2016 WL 4168853 (C.D. Cal. Aug. 3, 2016) ...................... 10, 12

OPPOSITION TO MOTION TO COMPEL     - ii -     BRESKIN | JOHNSON | TOWNSEND PLLC
ARBITRATION                                      1000 Second Avenue, Suite 3670
CASE NO.: 2:22-CV-00441-RSM-MLP           Seattle, Washington 98104  Tel: 206-652-8660

*Harper v. Amazon.com*,
    12 F.4th 287 (3d Cir. 2004) .................................................................................... 15

*Hernandez v. Johnson & Johnson*,
    No. 20 Civ. 5136, 2021 WL 320612 (E.D. Wash. Jan. 8, 2021) ............................ 22

*JZK Inc. v. Coverdale*,
    192 Wash. App. 1022, 2016 WL 236481 (Jan. 19, 2016) ..................................... 15

*Luna v. Household Fin. Corp. III*,
    236 F. Supp. 2d 1166 (W.D. Wash. 2002) ........................................................... 20

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995) ......................................................................................... 12, 14

*Mayne v. Monaco Enters., Inc.*,
    191 Wash. App. 113 (2015) ............................................................... 15, 16, 18, 19

*McKee v. AT&T Corp.*,
    164 Wash. 2d 372 (2008) .................................................................................. 15, 20

*Miller v. Amazon.com, Inc.*,
    No. 21 Civ. 204, 2021 WL 5847232 (W.D. Wash. Dec. 9, 2021) ......................... 4, 5

*New Prime Inc. v. Oliveira*,
    139 S. Ct. 532 (2019) .................................................................................... 6, 8, 9

*Oliveira v. New Prime, Inc.*,
    857 F.3d 7 (1st Cir. 2017) ...................................................................................... 6, 7

*Olson v. The Bon., Inc.*,
    144 Wash. App. 627 (2008) .................................................................................. 20

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3d Cir. 2004) ....................................................................... 6, 13, 15

*Rimov v. Schultz*,
    162 Wash. App. 274 (2011) ................................................................................... 11

*Rittmann, et al. v. Amazon.com, Inc, et al.*,
    971 F.3d 904 (9th Cir. 2020) ........................................................................ 4, 5, 14

*Romero v. Watkins and Shepard Trucking, Inc.*,
    9 F.4th 1097 (9th Cir. 2021) ................................................................................. 13

*Romero v. Watkins and Shepard Trucking, Inc.*,
    No. 20 Civ. 55768, 2021 WL 3675074 (9th Cir. Aug. 20, 2021) .......................... 13

*Scott v. Cingular Wireless*,
    160 Wash. 2d 843 (2007) ............................................................................ *passim*

OPPOSITION TO MOTION TO COMPEL
ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

- iii -

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Shanks v. Delaware, L. & W.R. Co.,*
  36 S. Ct. 188 (1916) ................................................................................................. 4

*Southwest Airlines Co. v. Saxon,*
  142 S. Ct. 1783 (2022) ....................................................................................... 4, 5, 6

*Sovak v. Chugai Pharm. Co.,*
  280 F.3d 1266 (9th Cir. 2002) ........................................................................... 10, 12

*Szetela v. Discover Bank,*
  97 Cal. App. 4th 1094 (2002) ....................................................................... 21, 22, 23

*Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.,*
  207 F.2d 450 (3d Cir. 1953) ...................................................................................... 7

*Townsend v. Quadrant Corp.,*
  153 Wash. App. 870 (2009) ...................................................................................... 20

*Triton Transp., LLC v. Amazon Logistics, Inc.,*
  No. 21 Civ. 41524 (Or. Cir. Mar. 31, 2022) ........................................................... 14

*Waithaka v. Amazon.com, Inc.,*
  966 F.3d 10 (1st Cir. 2020) ........................................................................................ 4

*Wolsey, Ltd. v. Foodmaker, Inc.,*
  144 F.3d 1205 (9th Cir. 1998) .................................................................................. 11

*Zuver v. Airtouch Commc'ns., Inc.,*
  153 Wash. 2d 293 (2004) .......................................................................................... 16

**Statutes:**

9 U.S.C. § 1 ......................................................................................................... *passim*

RCW § 19.86.90 .................................................................................................. 21, 22

RCW § 190.100.180 .................................................................................................. 19

RCW § 190.100.190 .................................................................................................. 19

**PRELIMINARY STATEMENT**

Plaintiffs in the above-captioned matter respectfully submit this memorandum of law in opposition to the motion of Defendants Amazon.com Inc. and Amazon Logistics, Inc., (collectively "Defendants" or "Amazon") to Compel Arbitration. *See* ECF No. 31 ("Def. Br.").

By way of background, this action concerns Defendants' Delivery Service Partner ("DSP") program. DSPs are small businesses that were created at Amazon's direction, and that Amazon then hired to deliver packages to Amazon's customers located nationwide pursuant to a standard form adhesion contract that Amazon drafted (the "DSP Agreement"). Although Amazon classifies its DSPs as "independent contractors" in the DSP Agreement,[1] Amazon controls virtually every aspect of its DSPs' business, including the day-to-day activities of their delivery workers. (¶¶ 4-6, 41-42).[2] Amazon structured its program in this manner to circumvent the protections to which the DSPs are rightly entitled as franchisees under Washington's Franchise Protection Act ("FIPA"), RCW § 19.100.10, *et seq.*, and to foist certain employment related costs that Amazon should bear as the true employer of the DSPs' delivery workers onto the DSPs. (¶¶ 2-3, 10).

Unsurprisingly, Defendants seek to compel arbitration – and enforce the arbitration provision's class action waiver – to prevent any individual DSP from obtaining relief capable of curtailing Amazon's abuses on a systemic, program-wide basis. However, Defendants' reliance on the DSP Agreement's arbitration provision is misplaced.

*First*, Defendants cannot compel arbitration under the Federal Arbitration Act ("FAA") because the DSP Agreement is exempt under the FAA's carve-out for contracts involving transportation work. *Second*, Defendants cannot compel arbitration under Washington law, because, under binding Ninth Circuit precedent, a choice-of-law provision is insufficient to

---

[1] During the time-period covered by this action there were three versions of the DSP Agreement, which are annexed to the Declaration of Sarah E. Flohr ("Flohr Decl."). *See* Flohr Decl. Ex. 1. However, because any differences between the three versions are irrelevant to Plaintiffs' arguments, all citations to the "DSP Agreement" herein refer to the three versions of the agreement collectively.

[2] Unless otherwise indicated, all citations herein to "(¶ __)" are to the First Amended Complaint, ECF No. 25.

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

- 1 -

BRESKIN | JOHNSON | TOWNSEND ᴾᴸᴸᶜ
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

incorporate state procedural arbitration rules, and instead simply selects the applicable substantive, decisional law. *Third*, even if Washington law governed arbitration, and it does not, the arbitration provision is unenforceable because it is both procedurally and substantively unconscionable.

In sum, Amazon has booked huge profits at its DSPs' expense, many of whom it crushed into bankruptcy after fraudulently selling them false promises of independence and success. By this motion, Amazon seeks to scatter its victims across thousands of individual arbitrations – assuming, however unlikely, the DSPs would even pursue individual arbitrations *en masse* – knowing full well that its improper practices will continue unabated, because the arbitration clause Amazon drafted purports to bar an individual DSP from obtaining program-wide relief. Accordingly, the Court respectfully should reject Amazon's effort to avoid public accountability and deny its motion to compel arbitration.

## STATEMENT OF FACTS

DSPs are small businesses that Defendants hired to deliver packages to customers throughout the country.  To participate in the DSP program, Amazon required prospective DSPs to form a business entity; in other words, Amazon would not contract directly with individuals interested in the DSP program.[3]  Each DSP's relationship with Defendants is governed by a standard form adhesion contract that Defendants drafted without input from the DSPs, and that they presented on a take it or leave it basis ("DSP Agreement").[4]  Most of the DSP Agreement's provisions – including its "Governing Law; Submission to Arbitration" provision – are *extremely one-sided in Defendants' favor*, without any reciprocal rights provided to the DSPs or obligations imposed on Defendants.  *See, e.g.*, DSP Agreement, ¶ 5(a)-(b) (setting forth Defendants' non-

---

[3] *See* Joint Declaration of Omar Ali, Christian Perez, and Jose Eduardo Soto-Guajardo ("Ali, Perez, Soto-Guajardo Joint Decl.") ¶ 3, Declaration of Emilia Wiles ("Wiles Decl.") ¶ 3, Declaration of Max Whitfield ("Whitfield Decl.") ¶ 3; *see also* First Amended Complaint at Ex. A (Amazon's DSP marketing materials explaining, under the heading "What it takes to start your business," that DSPs will "need" to "create [their] business entity and officially become a delivery business owner").

[4] *See* Ali, Perez, and Soto-Guajardo Joint Decl. ¶ 4; Wiles Decl. ¶ 4, Whitfield Decl. ¶ 4.

reciprocal audit, data collection, and confidentiality rights).  Most notably, the DSP Agreement: (i) purports to limit both the type and amount of damages a DSP can recover from Defendants for claims arising under the DSP Agreement, while providing *no limit* on the damages Defendants can recover from its DSPs, *see id.* ¶¶ 6(d), 11; *see also id.* ¶ 12 (setting forth non-reciprocal indemnification rights); and (ii) grants Defendants the *unilateral* right to amend/modify the DSP Agreement, including all "Program Policies," *at any time*, and places the onus on the DSPs to routinely check Defendants' program-related electronic portal "to stay informed of any modifications." *Id.* ¶ 14; *see also id.* ¶ 1(c).

Finally, the DSP Agreement contains a compound "Governing Law; Submission to Arbitration" provision. *Id.* ¶ 13.  The first sentence of that provision states the DSP Agreement is governed by the "Federal Arbitration Act, applicable United States federal law, and Washington state law . . . ." *Id.*  The remainder of the provision states that the parties agree to submit any disputes arising out of the DSP Agreement to arbitration. *See id.*

## ARGUMENT

## I.   Defendants Cannot Compel Arbitration Under the FAA Because the DSP Agreement Falls Within Section 1's Exemption for Contracts for Transportation Work

Defendants cannot compel arbitration under the FAA because Plaintiffs are exempt under Section 1 of that Act.  *See* 9 U.S.C. § 1 (exempting any "contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce*") (emphasis added) (referred to herein as "Section 1" or the "Transportation Workers Exemption").

Section 1 embodies Congress's "demonstrated concern" that agreements involving transportation workers who play a "necessary role in the free flow of goods" across state borders be exempt from arbitration. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001).  In this connection, courts have recognized three broad categories of transportation workers who fall within the FAA's exemption, two of which are directly applicable here: (i) "those who transported

goods or passengers that were moving intestate;" and (ii) those "in positions 'so closely related' to interstate transportation 'as to be practically a part of it.'"   *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 20 (1st Cir. 2020) (quoting *Shanks v. Delaware, L. & W.R. Co.*, 36 S. Ct. 188, 189 (1916)).

As discussed below, Plaintiffs easily fall within these exempted categories because they transported Amazon packages that moved interstate commerce and were in positions "so closely related" to interstate transportation "as to be practically a part of it."   *Id.; see also* Points I.A and I.B, *infra*.  Notably, Defendants *do not* argue that its DSPs do not perform transportation work or that such work does not involve interstate commerce.  *See* Def. Br. at 7-8.  Rather, Defendants rely on *two* non-precedential district court decisions to argue that the DSP Agreement is not a qualifying "contract for employment" because the DSPs are business entities rather than people. *See* Points I.A and I.B, *infra*.  Defendants' argument – which is contrary to the plain language and intent of Section 1, Supreme Court precedent, and common sense – is meritless and should be summarily rejected.  *See* Point 1.C, *infra*.

## A.    Plaintiffs Are Engaged in Transportation Work

Defendants do not dispute that its DSPs perform transportation work.  *See* Def. Br. at 8. This is because the DSPs' work, including the work performed by their proprietors and drivers, easily satisfy the applicable standard.

To determine whether an employment contract qualifies under Section 1's exemption for "transportation workers," courts look at the "inherent nature of the work performed," as illustrated by the job description and primary duties, not the worker's title.[5]  In this case, each DSP entered into a "Delivery Service Partner Agreement" with Defendants.  (¶¶ 4-17).  The very title of the DSP Agreement, as well as the DSP Agreement's introductory provision, concede Plaintiffs' vital role in Amazon's vast interstate delivery system.  *See* DSP Agreement at Introduction (explaining that the contract governs the DSPs' "transportation, delivery, and related services").  Furthermore, the DSPs' job duties include, among other things, supervising and managing drivers that deliver

---

[5] *See Miller v. Amazon.com, Inc.*, No. 21 Civ. 204, 2021 WL 5847232, at *3 (W.D. Wash. Dec. 9, 2021) (citing *Rittmann v. Amazon, Inc.*, 971 F.3d 904, 911 (9th Cir. 2020)); *see also Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 & n.2 (2022) (same).

1   packages to their final destination, sorting and organizing packages, as well as picking up routes

2   themselves if short on drivers to make the deliveries.[6]

3          Accordingly, the nature of the DSPs' work compels the conclusion that the DSP Agreement

4   calls for the performance of work by transportation workers. *See Rittmann*, 971 F.3d at 909 (citing

5   9 U.S.C. § 1; *Circuit City*, 532 U.S. at 118-190).

6          **B.     Plaintiffs' Transportation Work Involves Interstate Commerce**

7          Similarly, Defendants do not dispute that Plaintiffs' work under DSP Agreements involves

8   "interstate commerce." *See* Def. Br. at 7-8; *see also Southwest Airlines*, 142 S. Ct. at 1784 (holding

9   that Section 1 exempts any contract involving a class of worker that plays "a direct and 'necessary

10  role in the free flow of goods' across borders") (quoting *Circuit City*, 532 U.S. at 121). Nor could

11  they, as the eight factors that courts examine to determine whether a worker is engaged in interstate

12  commerce compel that conclusion. *See Miller*, 2021 WL 5847232, at *3 (listing factors).

13         Indeed, in *Miller*, Judge Rothstein addressed whether Amazon's "flex drivers" – who

14  perform services virtually indistinguishable from those provided by the DSPs – were engaged in

15  interstate commerce. The Court concluded that "all of the factors relevant" to that consideration

16  supported denial of Amazon's motion to compel arbitration. *Miller*, 2021 WL 5847232, at *5.

17  Notably, *Miller* built upon the Ninth Circuit's ruling in *Rittmann*, which held that Amazon's flex

18  drivers, despite being purely local drivers, play a sufficiently significant role in the flow of goods

19  in interstate commerce to be exempt from arbitration under Section 1. *See Rittmann*, 971 F.3d at

20  904, *cert. denied* 141 S. Ct. 1374 (2021).

21         Thus, consistent with *Miller* and *Rittmann*, the DSPs are critical to Amazon's self-

22  professed ability to quickly ship products nation-wide: the DSPs' drivers make the final deliveries

23  of goods that have traveled across state lines to Defendants' customers, and the DSPs' proprietors

24  supervise and monitor their drivers, help organize Defendants' packages for load out onto the

25  delivery vehicles (and even cover routes when needed). *See Ali, Perez, Soto-Guajardo Joint Decl.

26  ─────────────────

27  [6] *See* Ali, Perez, Soto-Guajardo Joint Decl. ¶¶ 9-11, Wiles Decl. ¶¶ 10-11, Whitfield Decl. ¶ 9; *see also*
    *Southwest Airlines*, 142 S. Ct. 1783 (holding airline ramp *supervisor* was a transportation worker involved
28  in interstate commerce under the FAA).

¶¶ 7-11, Wiles Decl. ¶¶ 8-11, Whitfield Decl. ¶¶ 7-9.  Accordingly, Plaintiffs' activities clearly "play a direct and 'necessary role in the free flow of goods' across borders" making the DSP Agreement exempt from the FAA.  *Southwest Airlines*, 142 S. Ct. at 1783 (quoting *Circuit City*, 532 U.S. at 121).[7]

### C.   Defendants' Argument that the FAA's Section 1 Exemption Is Inapplicable Because Its DSPs Are Business Entities Is Meritless

As previously noted, Defendants argue that the DSP Agreement does not qualify as a contract for employment because the contracts are "between two business entities."  *See* Def. Br. at 8.  In other words, according to Defendants, Section 1 applies only if the plaintiff is a natural person.  Defendants' argument fails for several reasons.

*First,* Defendants' argument is contrary to Section 1's plain language, which does not limit the exception's sweep to contracts "between" or "signed by" a natural person.  Rather, as the Supreme Court recently explained, "Congress used the term 'contracts of employment' in a broad sense to *capture any contract* for *the performance of work by workers*."  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 541 (2019) (emphasis added).  Thus, the pertinent inquiry *is not* the identity of the signatory, but whether the contract's *subject matter* involves the performance of work by workers.  *See id.*; *see also Circuit City*, 532 U.S. at 122 (discussing qualifying contracts not in terms of the identity of the parties, but in terms of those "*involving* the specific exempted categories set forth in § 1") (emphasis added).  In fact, the contract in *New Prime* was between the defendant trucking company and the transportation worker plaintiff's limited liability company.

---

[7] *See also Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593 (3d Cir. 2004) (relying on affidavit submitted by plaintiff explaining that her duties included "monitoring and improving the performance of drivers under [her] supervision to insure [sic] the timely and efficient delivery of packages," to conclude that she was a worker involved in interstate commerce and therefore exempt under Section 1); *Canales v. Lepage Bakeries Park St. LLC*, No. 21 Civ. 40065, 2022 WL 952130, at *6 (D. Mass. Mar. 30, 2022) (holding that "supervising other drivers" *is still closely related enough* to interstate commerce as to be "practically a part of it").

*See Oliveira v. New Prime, Inc.*, 857 F.3d 7, 17 (1st Cir. 2017).

Here, the DSP Agreements are, by definition, contracts calling for the performance of work by workers.  Defendants do not and cannot dispute that the DSP Agreement obligates the DSPs to perform transportation and delivery work *via* their personnel, *i.e.*, workers.[8]  In fact, the instant dispute is very similar to the scenario recently addressed by the District of Massachusetts in *Canales*.  There, the court determined that the delivery worker plaintiffs were exempt from Section 1, notwithstanding the fact that they entered the agreement with the defendants *via* their distribution company, "T&B Doughboys, Inc."  *Canales*, 2022 WL 952130, at *7.[9]  Accordingly, the DSP Agreements are well within the heartland of contracts involving transportation workers that are exempted from the FAA.

*Second*, Defendants' bid to truncate artificially Section 1's "broad" sweep is directly at odds with Supreme Court precedent recognizing corporations as persons with the same rights as individuals under the law.  *See Citizens United v. FEC*, 558 U.S. 310 (2010) (citing *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 778, n. 14 (1978)) (providing an expanded interpretation of corporate personhood).  Relatedly, Defendants' cramped reading of Section 1 presupposes that corporations/business entities can somehow perform work other than through their living, breathing agents, such that the interposition of such an entity somehow eliminates the involvement of "workers."  This is nonsense; again, by definition, any contract calling on a business entity to

---

[8] *See* DSP Agreement at Introduction ("This Delivery Service Partners Agreement . . . which incorporates the Program Policies . . . governs the transportation, delivery, and related services *performed by the business entity* that you represent.") (emphasis added); *see also* Flohr Decl., Ex. 2 at ¶¶ F-J (Amazon's Program Policies dictating "eligibility requirements," "wage, hour and benefit requirements," "standards of professional conduct," "non-solicitation" rules, and "delivery safety standards" for the DSPs' delivery workers).

[9] *See also*, *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450 (3d Cir. 1953) (applying Section 1 exemption where plaintiff was not a worker acting in an individual capacity); *Amalgamated Ass'n of St. Elec. Ry & Motor Coach Emps. of Am., Local Div. 1210 v. Pa Greyhound Lines, Inc.*, 192 F.2d 310 (3d Cir. 1951) (same).

perform work necessarily involves workers carrying out the business entity's obligations.  And here, the proprietors of the DSP Plaintiffs who signed the DSP Agreement as representatives of their respective business entities submitted declarations that they, in addition to their delivery driver workers, performed qualifying transportation and delivery work.  *See* Ali, Perez, Soto-Guajardo Joint Decl. ¶¶ 9-11, Wiles Decl. ¶¶ 10-11, Whitfield Decl. ¶ 9.

*Third*, Defendants' argument elevates form over substance in a manner that, as noted above, is not only inconsistent with the Supreme Court's interpretation of Section 1 but is also inconsistent with that exemption's purpose.  Indeed, the Supreme Court has explained that Congress enacted Section 1 out of its "demonstrated concern" that employment contracts involving certain economic activities *not* be subject to the FAA, *Circuit City*, 532 U.S. at 121, and therefore used the phrase "contracts of employment in a *broad* sense."  *New Prime*, 139 S. Ct. at 541 (emphasis added).  In fact, in *New Prime*, the Supreme Court held that independent contractor relationships, like the ones established by the DSP Agreement, qualify as contracts for employment.  *Id*.  As such, there is nothing about the Plaintiffs' legal status under the DSP Agreement that prevents them from qualifying for the exemption.

Conversely, Defendants do not explain how Section 1's purpose is advanced by forcing the parties to a contract that clearly calls for transportation and delivery work to arbitrate simply because *Defendants required* each prospective DSP to create a business entity to participate the DSP program in the first place.  *See* Ali, Perez, Soto-Guajardo Joint Decl. ¶ 3, Wiles Decl. ¶ 3, Whitfield Decl. ¶ 3.  As such, it is telling that Defendants *do not* argue that Section 1 would be inapplicable had the individuals who entered into the agreement on behalf of the business entities that they represent simply done so in an individual capacity.  *See* Def. Br. at 8.

*Fourth*, Defendants' interpretation of Section 1, if accepted, would lead to contrived efforts

by companies with superior bargaining power to circumvent the FAA's transportation workers exemption by forcing transportation workers to form intermediary business entities before agreeing to contract with them. Indeed, just like the defendant in *Canales*,[10] Amazon here required prospective DSPs to form business entities before they could participate in the program. *See* Ali, Perez, Soto-Guajardo Joint Decl. ¶ 3, Wiles Decl. ¶ 3, Whitfield Decl. ¶ 3. This Court should not countenance Defendants' transparent attempt to defeat Congress' intent.

*Finally*, the two district court decisions on which Defendants pin their entire argument, *see* Def. Br. at 8, are simply unconvincing for the reasons stated above. In any event, those decisions are not from this district and neither the Supreme Court nor the Ninth Circuit has even hinted that it would endorse those courts' stilted reading of Section 1. Rather, given that the Supreme Court had broadly interpreted the phrase contract for employment to "*capture any contract* for *the performance of work by workers*," *New Prime*, 139 S. Ct. at 541 (emphasis added), it is clear that the Supreme Court would find a contract meeting those criteria to be exempt from Section 1, regardless of the legal status of the entity that signed the contract.

## II.    Defendants Cannot Compel Arbitration Under Washington State Law

### A.    Washington Law Is Inapplicable to the Issue of Arbitration

Defendants argue in the alternative that, even if arbitration is unenforceable under the FAA, it is nonetheless enforceable under Washington law. Defendants are wrong. As discussed below, the DSP Agreement's "Governing Law; Submission to Arbitration" provision makes clear that the FAA governs arbitration, while Washington State law provides the substantive, decisional law.

In the Ninth Circuit, "there is a strong default presumption that the Federal Arbitration Act,

---

[10] The affidavits submitted by the plaintiffs in *Canales* explained that the defendant counterparty to their distribution agreement required them to form a business entity before the defendant would agree to contract with them. *Canales*, No. 21 Civ. 40065 (D. Mass.), ECF No. 16-2.

*not state law* supplies the rules for arbitration" and to "overcome that presumption, the parties to an arbitration agreement *must evidence a clear intent to incorporate state law rules for arbitration.*"  *Fid. Fed. Bank FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (cleaned up and emphasis added).[11]  In applying this principle, "[t]he Ninth Circuit has" explained that "absent any other indication of the parties' intent, a general choice-of-law clause *applies state substantive law*, while the FAA governs arbitration procedure that affects the allocation of decisional authority between courts and arbitrators."  *Golden*, 2016 WL 4168853, at *8 (emphasis added).  Indeed, the Ninth Circuit has held that even where an agreement *makes no mention of the FAA* and contains a "governing law" provision specifying state law, the FAA nonetheless controls and is not supplanted or supplemented by state arbitration law absent a clear statement to the contrary.  *See Sovak*, 280 F.3d at 1269-70; *see also Golden*, 2016 WL 4168853, at *8.

The arbitration clause at issue in this case is, in fact, a combination of a "Governing Law" provision and a "Submission to Arbitration" provision.  *See* DSP Agreement ¶ 13.  The first sentence of that provision supplies the governing law:

> This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal Law, and Washington state law, without reference to any applicable conflict of laws rules.

*Id.*  The remainder of the provision sets forth the agreement to arbitrate and makes no mention of Washington law.  *See id.*  Against this backdrop, Defendants' perfunctory conclusion that the provision's generic reference to "Washington state law" evidences a *clear* intent to incorporate the Washington Uniform Arbitration Act ("WUAA"), RCW § 7.04A, *et. seq.*, in addition to the FAA,

---

[11] *See also Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002) ("[T]he strong default presumption is that the FAA, not state law, supplies the rules for arbitration"); *Golden v. O'Melveny & Meyers LLP.*, No. 14 Civ. 8725, 2016 WL 4168853, at *8 (C.D. Cal. Aug. 3, 2016) (same).

fails for no less than three reasons.[12]

*First,* the Ninth Circuit has repeatedly held that a generic choice-of-law provision – even if embedded in an arbitration clause – *is insufficient* to incorporate state procedural, arbitration rules in the absence of a specific reference to those rules.  *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1212 (9th Cir. 1998) (holding that governing law provision that selected California law, but that did "not contain a *specific reference to the state arbitration rule at issue*," did not incorporate state arbitration law) (emphasis added).  Here, although the DSP Agreement's "Governing Law; Submission to Arbitration" provision expressly incorporates the FAA, it *does not* mention the WUAA or otherwise state that Washington law pertaining to arbitration agreements applies in addition, or as an alternative, to the FAA.  *See id.*  As the cases discussed below demonstrate, this failure is fatal to Defendants' argument.

In *Fid. Fed. Bank*, the Ninth Circuit considered an "arbitration clause" that provided as follows:

> Disputes or controversies shall be submitted to and resolved by binding arbitration in accordance with the laws of the State of California and the Rules of the American Arbitration Association.

386 F.3d at 1312.  The defendant argued that the provision "expresse[d] the clear intent of the parties to incorporate California's arbitration rules."  *Id.* at 1311-12.  The Ninth Circuit, however, rejected defendant's argument, "interpret[ed] the agreement . . . to elect state substantive law but federal procedural law," and therefore held that the FAA alone governed issues relating to arbitration.  *Id.*

Similarly, in *Sovak*, the Ninth Circuit addressed the parties' agreement "to arbitrate all

---

[12] Washington does not recognize or permit common law arbitration.  *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wash. 2d 885, 893 (2001).  Rather, arbitration in Washington is statutory and controlled by the WUAA. *See Rimov v. Schultz*, 162 Wash. App. 274, 279 (2011).

disagreements in Chicago pursuant to Illinois law and the rules of the American Arbitration Association." *Sovak*, 280 F.3d at 1268. The Ninth Circuit held that, although the parties to an agreement can select "state law rules for arbitration," a "general choice-of-law clause *within an arbitration provision* does not trump the presumption that the FAA supplies the rules for arbitration." *Id.* 1269-70 (emphasis added). Accordingly, the court "interpret[ed] the choice-of-law clause as simply supplying state substantive, decisional law, and not state laws rules for arbitration." *Id.*[13]

So too here, *Wosley*, *Fid. Fed. Bank*, and *Sovak* squarely foreclose Defendants' argument and compel the conclusion that the DSP Agreement's generic reference to "Washington state law" merely provides the substantive, decisional law for any non-federal claims. In fact, the argument that the FAA alone governs the parties' agreement to arbitrate *is even stronger* here than it was in those cases. In both *Fid. Fed. Bank* and *Sovak*, the state choice-of-law provision was embedded *in the same sentence* as the parties' agreement to arbitrate and there was *no reference to the FAA*. Here, the sentence of the DSP Agreement that references "Washington state law" *does not* contain the promise to arbitrate, and the agreement expressly incorporates the FAA. For this reason, it is unsurprising that, elsewhere in their brief, Defendants concede that the FAA alone governs arbitration. *See* Def. Br. at 5 ("Pursuant to the Agreement's *express terms*, *the FAA governs* the Agreement, including *the arbitration provisions*") (emphasis added).[14]

Notably, the Third Circuit's decision in *Palcko*, upon which Defendants rely, *see* Def. Br.

---

[13] *See also Golden*, 2016 WL 4168853, at *13 ("Under Ninth Circuit law, the Agreement's general choice-of-law clause *does not* evidence the parties' clear intent to apply California law to supply the procedural rules of arbitration") (emphasis added).

[14] *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (analyzing compound choice-of-law/arbitration provision and rejecting argument that the "juxtaposition of the two clauses suggests that the contract incorporates 'New York law relating to arbitration.'").

at 9, provides a textbook example of the kind of provision that clearly evidences the parties' intent to incorporate state arbitration law, while exposing the insufficiency of the clause at issue here. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004).  Specifically, the agreement in *Palcko*, like the one at issue here, expressly incorporated the FAA.  DSP Agreement, ¶ 13.  However, *unlike here*, the *Palcko* agreement "itself envisioned the possibility that" the agreement "would be deemed exempt from the FAA's coverage" and expressly "provided for that contingency," stating "[t]o the extent that the Federal Arbitration Act is inapplicable, *Washington law pertaining to agreements to arbitrate shall apply*." *Palcko*, 372 F.3d at 596 (emphasis added).[15]

*Second*, Defendants' reading of the DSP Agreement's choice-of-law provision is further undermined by the provision's plain language.  Specifically, despite including a generic reference to "United States federal law," the provision *nonetheless expressly incorporates the FAA*.  The clear implication being that the DSP Agreement's generic reference to Washington law, without any reference to the WUAA, was not intended to incorporate Washington arbitration law.

This conclusion is bolstered by the fact that the DSP Agreement does not provide any hierarchy concerning the application of the FAA versus the WUAA.  Unlike the agreements in *Palcko* and *Romero* – which clearly incorporated state arbitration rules and expressly stated that

---

[15] Defendants' reliance on *Romero v. Watkins and Shepard Trucking, Inc.*, No. 20 Civ. 55768, 2021 WL 3675074, at *2-3 (9th Cir. Aug. 20, 2021) is misplaced for similar reasons.  As an initial matter, *Romero* is unpublished and not precedential.  In any event, the agreement in *Romero* – which was a standalone agreement dealing solely with the issue of arbitration – expressly stated that if the FAA was deemed inapplicable then Nevada state law would govern.  *See id.* at *2 ("Where the FAA does not apply, the Arbitration Policy selects Nevada law."); *see also Romero v. Watkins and Shepard Trucking Co.*, 9 F.4th 1097, 1099 (9th Cir. 2021) (companion decision noting that the "Arbitration Policy *is a stand-alone agreement*, which requires that 'all employment-related disputes' be resolved through individual arbitration" and providing that if the agreement is determined to be "not subject to and governed by the FAA, then the laws of the State of Nevada" apply).  Thus, like *Palcko, but unlike here*, the agreement at issue in *Romero* expressly instructs that state arbitration rules will govern the issue of arbitration in the event the agreement is not subject to the FAA.

such rules applied *only if the FAA was deemed inapplicable* – the current agreement provides no

such instruction.  As such, if Defendants' position were accepted, the DSP Agreement would leave

the parties and an adjudicator guessing as to which act's rules governed or how to resolve any

conflicts between the acts.  The untenability of Defendants' position speaks for itself.

*Third*, to the extent Defendants argue on reply that the choice-of-law provision is

ambiguous, that argument fails for two reasons.  As an initial matter, by claiming ambiguity,

Defendants would be conceding that the DSP Agreement does not "evidence a 'clear intent' to

incorporate state law rules for arbitration." *Fid. Fed. Bank*, 386 F.3d at 1311.  In any event, as the

Ninth Circuit has explained, in addressing whether the parties to a contract intended to incorporate

Washington arbitration rules, the reviewing court is required to construe any ambiguities *against

the drafter*, *i.e.*, Defendants.[16]  Thus, having drafted "an ambiguous document, [Defendants]

cannot now claim the benefit of the doubt." *Mastrobuono*, 514 U.S. at 63.

*Finally*, Defendants' reliance on two non-binding decisions from other jurisdictions –

*Triton Transp., LLC v. Amazon Logistics, Inc.*, No. 21 Civ. 41524 (Or. Cir. Mar. 31, 2022) and

*Amos v. Amazon Logistics, Inc.*, No. 22 Civ. 55, ECF No. 25 (M.D.N.C. June 3, 2022) – is

unavailing.  *See* Def. Br. at 9.  Putting aside that both decisions were wrongly decided for the

reasons stated above, neither decision is remotely persuasive.  *Triton Transp.* is a summary order

devoid of any analysis.  And in *Amos*, the plaintiffs *did not challenge* the issue of whether

Washington law governed arbitration under the DSP Agreement as an alternative to the FAA, and

---

[16] *See Rittmann*, 971 F.3d at 920 ("Because it is not clear that the parties intended to apply Washington law to the arbitration provision in the event the FAA did not apply, we construe ambiguity in the contract against Amazon"); *see also Mastrobuono*, 514 U.S. at 62 (analyzing issue of whether choice-of-law provision governed arbitration and noting that defendants "cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it.").

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP
- 14 -
BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

instead simply assumed *arguendo* that it did.[17]

Accordingly, because the DSP Agreement does not clearly incorporate the WUAA, only the FAA governs arbitration, and because the DSP Agreement is exempt under Section 1, Defendants' motion must be denied.[18]

**B.      Even if Washington Law Governs the Arbitration Provision, the Provision Is Unenforceable Because It Is Unconscionable**

Even if Defendants are correct that Washington law governs the agreement to arbitrate in addition to the FAA – and they are not – the DSP Agreement's arbitration clause is nonetheless unenforceable under Washington law, because it is unconscionable and contrary to public policy.

Under Washington law, "[g]eneral contract defenses such as unconscionability may invalidate arbitration agreements." *McKee v. AT&T Corp.*, 164 Wash. 2d 372, 383 (2008). Washington courts "recognize[] two types of unconscionability for invalidating arbitration agreements, procedural and substantive." *Burnett v. Pagliacci Pizza, Inc.*, 196 Wash. 2d 38, 54 (2020).  "Either type of unconscionability alone is sufficient to void a contract." *JZK Inc. v. Coverdale*, 192 Wash. App. 1022, 2016 WL 236481, at *9 (Jan. 19, 2016) (citing *Gandee v. LDL Freedom Enters., Inc.*, 176 Wash. 2d 598, 603 (2013)); *see also Mayne v. Monaco Enters., Inc.*, 191 Wash. App. 113, 118 (2015) (same).  As discussed below, the DSP Agreement's arbitration

---

[17] *See Amos*, No. 22 Civ. 55, *Pls.' Resp. Br. to Def.'s Mot. to Compel Arb.*, ECF No. 16 at 20 ("[t]he following analysis assumes *arguendo* that Washington substantive law should then be considered" if "the FAA does not apply"); *see also Amos*, No. 22 Civ. 55, *Order on Mot. to Compel Arb.*, ECF No. 25 at 6 (noting that plaintiffs did not challenge threshold issue of whether Washington law governed arbitration).

[18] Defendants' reliance on *Harper v. Amazon.com*, 12 F.4th 287, 295 (3d Cir. 2004) is misplaced because there the court did not hold that state law governed arbitration where the agreement was exempt from the FAA, but rather remanded to the district court to consider the issue in the first instance.  And *Adams v. Parts Distrib. Xpress Inc.*, No. 20 Civ. 697, 2021 WL 1088231 (E.D. Pa. Mar. 22, 2021) was simply wrongly decided.  Specifically, although *Adams* relied on *Palcko* to hold that Pennsylvania law required arbitration where the contract was exempt under the FAA, *Adams* ignored that *Palcko*'s holding turned on the fact that the *Palcko* agreement, unlike the *Adams* agreement, *expressly instructed* that state law would govern arbitration if the FAA was deemed inapplicable.

OPPOSITION TO MOTION TO COMPEL
ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

- 15 -

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

provision is unenforceable on both grounds.

### 1.    The Arbitration Provision Is Procedurally Unconscionable

"Procedural unconscionability applies to impropriety during the formation of the contract . . . ." *Burnett*, 196 Wash. 2d. at 54. "A contract is 'procedurally unconscionable' when a party with unequal bargaining power lacks a meaningful opportunity to bargain . . . ." *Id.*; *see also Adler v. Fred Lind Manor*, 153 Wash. 2d 331, 348-49 (2004) (same). In assessing whether there "was a lack of meaningful choice considering all the circumstances surrounding transaction," Washington courts consider, *inter alia*, the following factors: (i) the manner in which the contract was created; (ii) whether each party had a meaningful opportunity to understand the terms of the contract; and (iii) whether important terms were obscured in fine print. *Burnett*, 196 Wash. 2d at 54. "These three factors should not be applied mechanically without regard to whether in truth a meaningful choice existed." *Cornelius v. Alpha Kappa Lambda*, 19 Wash. App. 2d 862, 869 (2021) (quoting *Zuver v. Airtouch Commc'ns., Inc.*, 153 Wash. 2d 293, 303 (2004)) (cleaned up).

"The fact that a contract is an adhesion contract" is also a relevant consideration in assessing procedural unconscionability. *Burnett*, 196 Wash. 2d at 54; *see also Adler*, 153 Wash. 2d at 347 n.7. "An adhesion contract exists if a standard printed contract was prepared by one party on a 'take it or leave it' basis with no genuine bargaining equality between the parties." *Mayne*, 191 Wash. App. at 118 (citing *Zuver*, 153 Wash. 2d at 304).[19]

Here, there can be no serious dispute that the DSP Agreement is an adhesion contract. Defendants do not, and cannot, dispute that they alone drafted the DSP Agreement, which is a

---

[19] An adhesion contract is procedurally unconscionable where it is accompanied by "*some* evidence that the employer refused to respond to [the plaintiff's] questions or concerns, placed undue pressure on [the plaintiff] to sign the agreement without providing her with a reasonable opportunity to consider its terms, *and/or that the terms of the agreement was set forth in such a way that an average person could not understand them.*" *Mayne*, 191 Wash. App. at 120 (quoting *Zuver*, 153 Wash. 2d at 306-07) (emphasis added).

standard form contract offered to prospective DSPs on a take-it-or-leave-it basis. *See* Ali, Perez, Soto-Guajardo Joint Decl. ¶ 4, Wiles Decl. ¶ 4, Whitfield Decl. ¶ 4. Against this backdrop, the DSP Agreement's arbitration provision is procedurally unconscionable because: (i) an average person could not understand the arbitration provision's scope/terms; (ii) the DSPs were forced to accept continuous changes to the scope of the arbitration provision under threat of termination from the program; and (iii) Defendants did not provide a reasonable opportunity for the DSPs to ask questions before they endorsed the DSP Agreement.

*First*, an average person could not have meaningfully understood the scope of the DSP Agreement's arbitration provision – which directs that, *inter alia*, disputes regarding the parties' rights and obligations be submitted to arbitration – because Defendants not only had the unilateral right to alter the DSPs' rights and obligations at any time,[20] but they also routinely exercised that right. (¶¶ 8, 36, 71, 99-100, 116); *see also Burnett*, 196 Wash. 2d at 53, n.4 (noting that the court did "not disagree" with numerous cases holding that a parties right to unilaterally modify arbitration agreement rendered agreement "illusory" and unenforceable).

Indeed, assuming *arguendo* that an average DSP understood the kind of disputes that could arise from Defendants' *existing policies*, there was no way for a prospective DSP to meaningfully appreciate – when weighing whether to endorse the DSP Agreement – the kinds of disputes involving *future policies/requirements* that could be forced into arbitration. In other words, absent a crystal ball, there was no way for DSPs to know the full extent of the types of claims for which they were waiving their right to a judicial forum, because the policies/requirements/terms at issue *did not yet exist*. This issue is not just academic, but critical, since the DSPs' claims turn largely

---

[20] *See* DSP Agreement ¶ 1(c) ("[W]e may establish additional terms, conditions, policies, guidelines, standards, and rules that will apply to the Services that your company provides under this Agreement. We call these 'Program Policies'"); *id.* ¶ 14 ("We may modify this Agreement (including, for the avoidance of doubt, the Program Policies) *at any time*") (emphasis added).

OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

- 17 -

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

on the fact that Defendants continuously moved the goal posts with respect to their rights and obligations under the program.  (¶¶ 8, 36, 71, 99-100, 116).

*Second*, every time Defendants unilaterally modified the DSPs' rights and obligations under the DSP Agreement – and therefore altered the scope of potential disputes covered by the arbitration provision – Plaintiffs could either accept the changes and remain in the DSP program or immediately stop working as a DSP and be held in breach.[21]  However, as Washington courts have noted in the context of invalidating arbitration agreements, "[a] choice compelled by the threat of immediate termination is not a meaningful choice."  *See Mayne*, 191 Wash. App. at 123.[22] Here, the lack of a meaningful choice is exacerbated by the fact that – at the time the DSPs were required to agree to the numerous modifications of the DSP Agreement or exit the program – they had already made substantial, non-recoverable investments in their businesses.  (¶¶ 6, 40, 69).

*Finally*, the arbitration provision is procedurally unconscionable because Amazon did not provide prospective DSPs with a reasonable opportunity to inquire about the DSP Agreement. Specifically, when Defendants approved a DSP applicant, the applicant was instructed to endorse an electronic version of the DSP Agreement that Defendants made available *via* an online portal. Defendants did not provide DSP Applicants with an opportunity to ask questions about the DSP Agreement prior to endorsing it.   Rather, DSPs had to accept the DSP Agreement *before*

---

[21] *See* DSP Agreement ¶ 14 ("If your company continues to perform the Services after the effective date of any modification to this agreement, your company agrees to be bound by the modifications. *If your company does not agree to the modifications, your company must stop performing services*.") (emphasis added and all-caps omitted); *id.*  ¶ 6(a)(ii) ("Amazon may terminate this agreement" for breaches of the agreement's provisions or Program Policies).

[22] *See also id.* at 121 (holding that arbitration agreement was procedurally unconscionable where employee, who had already been working for company, lacked a "meaningful choice" because his only options were "to decline to sign the [new arbitration agreement] and immediately end his employment, or he could sign the agreement and continue working."); *Adler*, 153 Wash. 2d at 350-51 (remanding for determination as to whether plaintiff's assent to arbitration agreement was accompanied by threat of termination, which would support procedural unconscionability).

Defendants would invite them to their Seattle campus for DSP orientation, which was the first time Defendants discussed or invited questions regarding the DSPs' rights and obligations under the agreement. *See* Wiles Decl. ¶ 5, Whitfield Decl. ¶ 5.[23]  Moreover, when DSPs did raise uninvited questions with Defendants regarding specific aspects of the DSP agreement, Defendants either ignored those inquiries or provided answers that failed to address the actual questions asked. *See* Ali, Perez, Soto-Guajardo Joint Decl. ¶ 5, Wiles Decl. ¶ 6.

### 2.    The Arbitration Provision Is Substantively Unconscionable

"Substantive unconscionability involves overly harsh or one-sided provisions of an agreement." *Mayne*, Wash. App. at 118; *Burnett*, 196 Wash. 2d at 57 (same).  An arbitration agreement is also voidable as substantively unconscionable where it would violate the forum's strong public policy. *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 853 (2007).  Here, the arbitration provision, and the DSP Agreement's other provisions that directly affect the arbitration provision, are substantively unconscionable because they are contrary to Washington's strong public policy and also shockingly one-sided.

### a.    The Agreement Violates Washington State Public Policy

The gravamen of this action is that Defendants have intentionally misclassified the DSPs as independent contractors, when they are, in fact, franchisees, to circumvent the protections the DSPs are rightly entitled to under the FIPA.  (¶¶ 10-11, 139(c)-(j), 143, 176-190).  In this regard, Defendants' DSP program constitutes a systemic, program-wide violation of the FIPA, and, in turn, the Consumer Protection Act ("CPA").  *Id.*; *see also* RCW § 190.100.190 (violations of the franchisee's bill or rights, RCW § 190.100.180, constitute violations of the CPA).  As discussed

---

[23] Plaintiff Stelvio migrated from the DSP 1.0 program to the 2.0 program.  Defendants provided Stelvio with one week to decide whether to accept the 2.0 DSP Agreement or to exit the program and did not meaningfully respond to Stelvio's questions regarding the changes to the program. *See* Ali, Perez, Soto-Guajardo Joint Decl. ¶ 5.

below, the arbitration agreement violates strong Washington public policy, because its class action waiver and related limitation on equitable relief would preclude the DSPs from effectively stopping Amazon's ongoing, systemic violations of the CPA and FIPA.

Numerous Washington courts, including the Washington Supreme Court, have stressed that private actions under the CPA are indispensable to protecting the public from "unfair and deceptive acts and practices in commerce." *Scott*, 160 Wash. 2d at 853. This is because "[c]onsumers bringing actions under the CPA *do not merely vindicate their own rights*; *they represent the public interest . . . .*" *Scott*, 160 Wash. 2d at 853 (emphasis added); *see also Dix v. ICT Grp, Inc.*, 160 Wash. 2d 826, 831 (2007) (same).

Given the CPA's public interest focus, Washington Courts have recognized that class actions are often indispensable to the effective enforcement of the CPA. *See Scott*, 160 Wash. 2d at 852 ("Class remedies not only resolve the claims of the individual class members but can also strongly deter future similar wrongful conduct, which benefits the community as a whole").[24] For this reason, Washington courts routinely hold that arbitration clauses barring class actions are substantively unconscionable where they would serve to significantly "forestall[] attempts to vindicate consumer rights" under the CPA. *Scott,* 160 Wash. 2d at 854.[25]

Here, the DSP Agreements' arbitration clause – and, in particular, its class action waiver – is contrary to public policy and therefore substantively unconscionable because it: (i) precludes

---

[24] *See also Dix*, 160 Wash. 2d at 839 (citing with approval *Am. Online, Inc. v. Super. Ct.*, 90 Cal. App. 4th 1, 17 (2001), which held that "[a] class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices" and avoiding the "burden of multiple litigation involving identical claims").

[25] *See also McKee*, 164 Wash. 2d at 396-97; *Olson v. The Bon., Inc.,* 144 Wash. App. 627, 637 (2008); *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1177-79 (W.D. Wash. 2002); *cf. Townsend v. Quadrant Corp.*, 153 Wash. App. 870, 882 (2009) (holding that an arbitration agreement was not substantively unconscionable because it did *not* preclude class actions).

OPPOSITION TO MOTION TO COMPEL
ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

- 20 -

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

DSPs from seeking program-wide injunctive relief, in clear violation of the CPA; (ii) seeks to undermine uniformity on the key legal issue of whether the franchisees are DSPs; (iii) would severely limit a DSP's access to evidence concerning the impact of Defendants' violations on other DSPs, which is critical to establishing a CPA claim; and (iv) when coupled with the DSP Agreement's remarkably aggressive provision limiting damages, would thwart effective enforcement of the CPA by discouraging otherwise meritorious actions.

*First*, the arbitration clause's class action bar, and the fact that it limits a DSP to obtaining injunctive relief only "on an individual basis" (DSP Agreement ¶ 13), forecloses a DSP's ability to prevent Defendants' continued violations of the CPA (and FIPA) *on a systemic basis* to protect all DSPs, in violation of Washington's strong public policy. *Scott*, 160 Wash. 2d at 853 (CPA advances Washington's strong public interests by permitting a plaintiff to obtain "injunctive relief even when the injunction would not directly affect their own private interests."); RCW § 19.86.90 (providing that an injured person "may bring a civil action . . . to enjoin further violations").

*Second*, by requiring each DSP to individually prove in arbitration that they are franchisees rather than "independent contractors," Defendants are not only attempting to thwart the CPA and FIPA, but also seeking to avoid a *uniform* holding on this key legal issue and its attendant deterrent effect.[26]  In this regard, Defendants' push for atomized proceedings presents an intolerable risk of inconsistent rulings – where certain *DSPs* are found to be franchisees and entitled to the FIPA's protections while others are not – notwithstanding that all DSPs operate under uniform program policies.

---

[26] *See Scott*, 160 Wash. 2d at 851 (Washington favors CPA class actions for purposes of "efficiency, *deterrence*, and access to justice"); (emphasis added); *see also Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101 (2002) ("By imposing this clause on its customers, [Amazon] has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware . . . that *any remedies obtained will only pertain to that single customer without collateral estoppel effect*.") (emphasis added).

OPPOSITION TO MOTION TO COMPEL                - 21 -
ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Third*, the arbitration provision would thwart a DSP's ability to prosecute effectively its CPA claim *even on an individual basis*.  This is because the arbitration provision purports to narrowly limit arbitral proceedings solely to the immediate, "individual" dispute between a DSP and Defendants, *see* DSP Agreement ¶ 13, notwithstanding that a CPA claim requires an examination of the Defendants' program-wide misconduct *vis-à-vis* other DSPs.[27]

*Fourth*, the DSP Agreement's "Limitation of Liability" provision, which *modifies the arbitration provision* by severely limiting the damages an arbitrator can award, *see* DSP Agreement ¶ 11, violates public policy because it conflicts with the CPA and would discourage otherwise meritorious actions.  *See Szetela*, 97 Cal. App. 4th at 1101 (holding that arbitration class action waiver was "harsh and unfair" because, *inter alia*, "it serves as a disincentive for [defendant] to avoid the type of conduct that might lead to class action litigation in the first place.").

Specifically, that provision: (i) precludes DSPs from recovering vast categories of damages, *see* DSP Agreement ¶ 11(a); and (ii) limits Defendants' total potential liability, regardless of the nature of the claim asserted and the actual damages sustained, to "the total amount paid by Amazon to your company for the particular services giving rise to liability in the *six-month period* prior to the event(s) giving rise to the claim," *id.* ¶ 11(b) (emphasis added and all-caps omitted).  Those limitations plainly contravene the broad damages available under the CPA, as well as its four-year statute of limitation, and are therefore unconscionable.[28]

---

[27] *See Hernandez v. Johnson & Johnson*, No. 20 Civ. 5136, 2021 WL 320612, at *6 (E.D. Wash. Jan. 8, 2021) (CPA claims look to "whether the acts were part of a *pattern or generalized course of conduct*, whether defendant committed *repeated acts prior to the act involving plaintiff*, whether there is a *danger of repetition of defendant's conduct after the act involving plaintiff*, and the number of consumers likely to be impacted by it.") (emphasis added).

[28] *See* RCW § 19.86.90 (permitting recovery of "the actual damages sustained" as well as the opportunity for an additional award of "an amount not to exceed *three times* the actual damages") (emphasis added); *Scott*, 160 Wash. 2d at 859 (holding provision substantively unconscionable where it "prevents the use of arbitration to vindicate a broad range of statutory CPA rights.").

OPPOSITION TO MOTION TO COMPEL
ARBITRATION
CASE NO.: 2:22-CV-00441-RSM-MLP

- 22 -

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Defendants' arguments to the contrary do not counsel otherwise. As an initial matter, Defendants are wrong that the numerous decisions striking down arbitration clauses involving class action waivers in the CPA context do not apply here because this is not a *consumer action*. *See* Def. Br. at 10. Simply put, the FIPA makes violations of its franchisee bill of rights actionable as a consumer violation under the CPA, and Plaintiffs assert claims on that basis. (¶¶ 176-90).

In any event, Defendants' argument that the arbitration provisions class action waiver is not substantively unconscionable because the damages at issue purportedly "are not too small to pursue on an individual basis," is similarly meritless. *Id.* No Washington court has held that an arbitration clause's class action waiver violates public policy *only if* the claims at issue are small. Rather, the touchstone is whether the arbitration provision would forestall effective prosecution of CPA claims, and here it does for the reasons stated above. Additionally, Defendants ignore that the DSP Agreement purports *to severely curtail the damages available* to the DSPs, rendering many claims not worth the cost of arbitration. *See* DSP Agreement ¶ 13.

### b.    The DSP Agreement Is Shockingly One-Sided

The DSP Agreement's arbitration clause, as well as the agreement's other provisions that modify or impact the arbitration clause, are substantively unconscionably for the additional reason that they are shockingly one-sided. Specifically, although the arbitration clause's class action waiver ostensibly applies to Defendants as well as the DSPs, in practice it serves only to limit the DSPs, since it strains credulity that Defendants ever would (or could) bring class claims against its DSPs. *See Szetela.* 97 Cal. App. 4th at 1100-01 (holding the one-sidedness of purportedly mutual class action waiver was "blindingly obvious" because companies "typically do not sue their customers in class action lawsuits").

Relatedly, Defendants, but not the DSPs, possess the unilateral right to modify the DSP

Agreements' terms, *including the arbitration clause*. *See* DSP Agreement ¶¶ 1(c), 14.  Moreover, because the arbitration agreement covers disputes arising under the DSP Agreement, every time Defendants altered the parties' substantive rights and obligations, they necessarily modified the scope of disputes subject to arbitration.

Additionally, the arbitration clause requires a DSP to send Defendants a letter describing the dispute before filing for arbitration – thereby previewing DSP's claims for Defendants – but it does not similarly obligate Defendants. *See Burnett*, 196 Wash. 2d at 57 (holding arbitration clause substantially unconscionable where, *inter alia*, it required only one of the parties to the agreement to preview it claims to the other party before initiating arbitration proceedings).

Finally, the DSP Agreement's extreme one-sidedness in Defendants' favor also extends to its other provisions that aim to limit the nature of the claims that Plaintiffs can assert in arbitration, as well as the amount of the damages that can be awarded.  *See* Statement of Facts, *supra*. Foremost, however is the DSP Agreement's aforementioned "Limitation of Liability," which impacts only the DSPs without any reciprocal limitation on the damages available to Defendants. *Scott*, 160 Wash. 2d at 857 ("A clause that unilaterally and severely limits the remedies *of only one side* is substantively unconscionable under Washington law.") (emphasis added).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel Arbitration in its entirety.  At a minimum, however, the Court should hold that the DSP Agreement's provisions waiving class actions, limiting the scope of equitable relief, and limiting Amazon's liability are void and unenforceable.

1  Dated:  July 15, 2022

2

3                              Respectfully submitted,

4
                               BRESKIN JOHNSON TOWNSEND PLLC
5

6  By: */s/ Roger M. Townsend*
           Roger M. Townsend, WSBA No. 25525
7          1000 Second Avenue, Suite 3670
           Seattle, WA  98104
8          Telephone:        206.652.8660
           Email:            rtownsend@bjtlegal.com
9

10                             KIRBY McINERNEY LLP

11
   By: */s/ Daniel Hume*
12         Daniel Hume (admitted *pro hac vice*)
           Andrew McNeela (admitted *pro hac vice*)
13         David Bishop (admitted *pro hac vice*)
           Sarah Flohr (admitted *pro hac vice*)
14         250 Park Avenue, Suite 820
           New York, NY 10177
15         Telephone:        212.371.6600
           Email:            dhume@kmllp.com
16                            dbishop@kmllp.com
                              amcneela@kmllp.com
17                            sflohr@kmllp.com

18         *Attorneys for Plaintiffs*
           FLI-LO FALCON, LLC, STEEL CITY
19         EAGLES, CORP., and STELVIO
           TRANSPORT LLC

20

21

22

23

24

25

26

27

28