UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FLI-LO FALCON, LLC, *et al.*,<br><br>      Plaintiffs,<br><br> v.<br><br>AMAZON.COM INC., *et al.*,<br><br>      Defendants. | Case No. C22-441-RSM-MLP<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION

This matter is before the Court on Defendants Amazon.com Inc. and Amazon Logistics, Inc.'s ("Defendants") Motion to Compel Arbitration ("Defendants' Motion") seeking to have this matter submitted to arbitration and to dismiss or stay this action pending the outcome of the arbitration proceeding. (Defs.' Mot. (dkt. # 31) at 1.) Plaintiffs Fli-Lo Falcon LLC, Steel City Eagles Corp., and Stelvio Transport LLC ("Plaintiffs") opposed the motion (Pls.' Resp. (dkt. # 34)), and Defendants filed a reply (Defs.' Reply (dkt. # 40)). The Court heard oral argument from the parties on August 22, 2022. (Dkt. # 41.)

Having considered the parties' submissions, oral argument, the governing law, and the balance of the record, the Court recommends that Defendants' Motion (dkt. # 31) be

GRANTED, and that this matter be DISMISSED without prejudice in favor of arbitration, as further explained below.

## II. BACKGROUND

Fli-Lo Falcon, LLC ("Fli-Lo Falcon") and Steel City Eagles Corp. ("Steel City") are former Amazon Delivery Service Partners ("DSP") respectively operating in Wyoming and Pennsylvania. (Am. Compl. (dkt. # 25) at ¶¶ 15-16; Whitfield Decl. (dkt. # 36) at ¶ 2; Wiles Decl. (dkt. # 37) at ¶ 2.) Stelvio Transport LLC ("Stelvio") is a current Amazon DSP operating in California. (Am. Compl. at ¶ 17; Ali, Perez, and Soto-Guajardo Decl. ("Ali Decl.") (dkt. # 38) at ¶ 2.)

Through its DSP Program, Amazon Logistics contracts with independently owned delivery businesses, such as Plaintiffs, to provide local delivery services. (McCabe Decl. (dkt. # 33) at ¶¶ 3-4.) As a prerequisite for joining the DSP Program, DSPs were required to create a business entity and/or corporation. (Whitfield Decl. at ¶ 3; Wiles Decl. at ¶ 3; Ali Decl. at ¶ 3; see also Am. Compl., Ex. A.) Upon joining the DSP program, the DSP executes the DSP Program Agreement (the "Agreement") with Amazon Logistics. (*Id.* at ¶ 4.) In this case, Stelvio executed the Agreement on July 27, 2018.[1] (McCabe Decl. at ¶ 7, Ex. B (dkt. # 33-2); Ali Decl. at ¶ 2.) Steel City executed the Agreement on May 13, 2019. (McCabe Decl. at ¶ 6, Ex. B; Wiles Decl. at ¶ 2.) Fli-Lo Falcon executed the Agreement on October 25, 2019. (McCabe Decl. at ¶ 5, Ex. A (dkt. # 33-1); Whitfield Decl. at ¶ 2.)

The Agreement contains an arbitration provision. (McCabe Decl., Ex. A at § 13, Ex. B at § 13.) In relevant part, that provision provides:

---

[1] Stelvio entered into the Agreement as part of the DSP 1.0 Program in September 2017 before later executing the Agreement as part of the DSP 2.0 Program on July 27. 2028. (*See* Ali Decl. at ¶ 2; McCabe Decl. at ¶ 7.)

REPORT AND RECOMMENDATION - 2

> This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal law, and Washington state law, without reference to any applicable conflict of laws rules. ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would.

(*Id.* (emphasis in original).) The Agreement's arbitration provision further requires the parties to arbitrate all disputes before the American Arbitration Association ("AAA") under AAA rules. (McCabe Decl., Ex. A at § 13, Ex. B at § 13.) The provision states:

> The arbitration will be conducted by the [AAA] under its rules, including the AAA's Commercial Arbitration Rules . . . YOUR COMPANY AND AMAZON EACH AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE ACTION. If for any reason a claim proceeds in court rather than in arbitration, your company and Amazon each waive any right to a jury trial.

(*Id.* (emphasis in original).)

On March 31, 2021, Defendants' Agreement with Fli-Lo Falcon expired, and Defendants chose not to renew it. (McCabe Decl. at ¶ 11.) On April 12, 2022, Defendants terminated the Agreement with Steel City. (*Id.* at ¶ 12.)

On May 20, 2022, Plaintiffs filed their amended class-action complaint in this Court on behalf of all current and former Amazon DSPs that executed the Agreement with Defendants as part of the DSP 2.0 Program. (*See* Am. Compl. at 2.) Per Plaintiffs' amended complaint, Plaintiffs seek damages, and declaratory and injunctive relief, for Defendants' alleged: (1) breach of contract; (2) fraud; (3) fraudulent inducement; (4) breach of the implied covenant of good faith and fair dealing; (5) unjust enrichment; and (7) violation of Washington's Consumer

REPORT AND RECOMMENDATION - 3

Protection Act; based on violations of Washington's Franchise Investment Protection Act arising out of Defendants' operation of the DSP 2.0 Program. (*See id.* at ¶¶ 11, 145-99.)

On June 17, 2022, Defendants filed the instant Motion, seeking to compel Plaintiffs to arbitrate their claims individually, and to dismiss or stay this action pending the outcome of the arbitration. (*See* Defs.' Mot. at 1.)

### III.    DISCUSSION

Defendants contend that Plaintiffs entered into valid agreements to arbitrate under the Federal Arbitration Act ("FAA"), and because the Agreement invokes and incorporates the AAA and its rules, the Agreement clearly delegates any remaining questions of arbitrability to an arbitrator.[2] (Defs.' Mot. at 4-7.) Plaintiffs respond that Defendants cannot compel arbitration under the FAA because Plaintiffs fall within the transportation worker exemption pursuant to 9 U.S.C. § 1 of the FAA. (Pls.' Resp. at 1, 3-9.) Plaintiffs additionally contend the arbitration provision in the Agreement is both procedurally and substantively unconscionable, and therefore, unenforceable. (*Id.* at 2, 15-24.)

As further explained below, the Court finds that: (1) the parties entered into a valid agreement to arbitrate under the FAA; (2) the transportation worker exemption under § 1 to the FAA does not apply because Plaintiffs are business entities; and (3) Plaintiffs' unconscionability challenges to the arbitration provision in the Agreement are the province of the arbitrator.

---

[2] Defendants additionally argue that this matter is independently subject to arbitration under Washington law even if the FAA does not apply. (Defs.' Mot. at 8-10; Defs.' Reply at 5-7.) Plaintiffs counter that the Agreement explicitly notes the FAA governs arbitration and that the Agreement does not clearly provide for Washington law in regard to arbitration. (Pls.' Resp. at 9-15.) As the Court finds that this matter is subject to arbitration under the FAA, which the parties' Agreement does clearly provide for, the Court declines to reach the issue of whether Washington law likewise applies to compel arbitration. However, the Court does note that at least one federal court has recently compelled arbitration of the Agreement under Washington law. *See Amos v. Amazon Logistics, Inc.*, 2022 WL 2181448, at *4-5 (M.D.N.C. June 16, 2022).

REPORT AND RECOMMENDATION - 4

### A.    Legal Standards

The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration and reverses years of hostility by the courts towards arbitration agreements." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)).

In a motion to compel arbitration, this Court is limited to determining: (1) whether a valid agreement to arbitrate exists, and, if so; (2) whether the agreement encompasses the claim at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the party seeking arbitration establishes both factors, "then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."[3] *Id.* But where the parties have "clearly and unmistakably" delegated questions regarding arbitrability to the arbitrator, the Court need not reach the second inquiry. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Under Ninth Circuit law, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.

If an agreement exists, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to

---

[3] A court, rather than an arbitrator, may consider the existence of a valid arbitration agreement in the first instance because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citations and internal quotations omitted). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

REPORT AND RECOMMENDATION - 5

arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss it outright. 9 U.S.C. § 3; *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).

### B. Existence of a Valid Arbitration Agreement

In this case, the parties do not appear to dispute or meaningfully contest that the Agreement was valid. (*See* Am. Compl. ¶¶ 17 ("[The] 2.0 DSP Agreement . . . currently governs the Parties' relationship today."), 32 ("Whitfield, Wiles and Omar each executed a DSP Agreement on behalf of their companies with [Amazon Logistics, Inc.]"), 146 ("The DSP Agreement is a valid and binding agreement between the DSPs and Defendants, the terms of which were common to all 2.0 DSP Program participants."); *see also* Defs.' Mot. at 5, 7; Pls.' Resp. at 2-3.) It is also clear that the Agreement contained an unambiguous arbitration provision providing for arbitration governed by the FAA that incorporated the AAA rules. (*See* McCabe Decl., Ex. A at § 13, Ex. B at § 13.) The Court therefore finds that the parties' Agreement contained a valid agreement to arbitrate.

Consequently, the Court will examine Plaintiffs' FAA exemption and enforceability challenges to the arbitration provision in turn:

### i. Transportation Workers Exemption

Plaintiffs first argue that Defendants cannot compel arbitration under the FAA because the transportation worker exemption under § 1 of the FAA exempts them from arbitration. (Pls.'

REPORT AND RECOMMENDATION - 6

Resp. at 3-9.) Plaintiffs maintain that the transportation worker exemption applies because Plaintiffs are engaged in transportation work as Amazon DSPs and that such work necessarily involves interstate commerce. (*Id.* at 4-6.)

Section 1 of the FAA exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The FAA therefore exempts two enumerated categories of workers—"seamen" and "railroad employees"—and a third residual category ("any other class of worker engaged in foreign or interstate commerce") from compelled arbitration. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019). Historically, the FAA exemption was found to be appropriate for "seamen" and "railroad workers" because "[Congress] did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001). Of relevant note:

> By the time the FAA was passed, Congress had already enacted federal legislation providing for the arbitration of disputes between seamen and their employers, *see* Shipping Commissioners Act of 1872, 17 Stat. 262. When the FAA was adopted, moreover, grievance procedures existed for railroad employees under federal law, *see* Transportation Act of 1920, §§ 300–316, 41 Stat. 456, and the passage of a more comprehensive statute providing for the mediation and arbitration of railroad labor disputes was imminent, *see* Railway Labor Act of 1926, 44 Stat. 577, 46 U.S.C. § 651 (repealed).
>
> …
>
> As for the residual exclusion of "any other class of workers engaged in foreign or interstate commerce," Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods explains the linkage to the two specific, enumerated types of workers identified in the preceding portion of the sentence. It would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation.

1  *Id.* The § 1 exclusion is thus to "be afforded a narrow construction" and outside of the
2  enumerated categories of workers "exempts from the FAA only contracts of employment of
3  transportation workers." *Id.* at 118-19.

4  On this issue, Plaintiffs specifically contend that the exemption applies to them because:
5  (1) the Agreement's subject matter calls for the performance of "work by workers" as articulated
6  in *New Prime*; (2) the Supreme Court has recognized corporations as persons with the same
7  rights as individuals under the law; (3) Plaintiffs' legal status under the Agreement does not
8  disqualify them from the exemption; and (4) Defendants' proposed interpretation would lead to
9  regular circumvention of the exemption. (Pls.' Resp. at 6-9.) Defendants respond that the § 1
10 exemption is inapplicable here because the parties' Agreement is not an employment contract,
11 but instead a commercial contract between Plaintiffs, comprising of transportation and logistics
12 companies, and Defendants for the commercial delivery of goods. (Defs.' Mot. at 7-8.) On reply,
13 Defendants further highlight that no employment contracts are in fact at issue in this case, that
14 "Plaintiffs are not 'transportation workers' but business entities that hire their own transportation
15 workers," and that the only cases to have considered whether the § 1 exemption applies to
16 commercial entities have rejected Plaintiffs' interpretation. (Defs.' Reply at 2-5.)

17 In *New Prime*, the Supreme Court recently analyzed the plain language of § 1 in deciding
18 whether it applied to independent contractors and determined that "Congress used the term
19 'contracts of employment' in a broad sense to capture any contract for the performance of *work*
20 *by workers*." 139 S. Ct. at 541 (emphasis in original); *accord Sw. Airlines Co. v. Saxon*, 142 S.
21 Ct. 1783 (2022).[4] In so holding, the Supreme Court examined the ordinary meaning of "contracts

---

[4] In *Southwest Airlines*, the Supreme Court recently clarified that the relevant "class of workers" must be "typically" and "directly involved in transporting goods across state or international borders" to be "engaged in foreign or interstate commerce" within the meaning of § 1's residual clause. 142 S. Ct. at

of employment" at the time Congress enacted the FAA, and explained that pursuant to the historical definition of "employment" and use of the phrase "contracts of employment" in legal authorities at the time of enactment, all work was treated as employment "whether or not the common law criteria for a master-servant relationship happened to be satisfied." *Id.* at 539-40. The Supreme Court further noted, in its examination of the meaning of § 1's "class of workers engaged in foreign or interstate commerce," that:

> More confirmation yet comes from a neighboring term in the statutory text. Recall that the [FAA] excludes from its coverage "contracts of employment of . . . any . . . class of *workers* engaged in foreign or interstate commerce." 9 U.S.C. § 1 (emphasis added). Notice Congress didn't use the word "employees" or "servants," the natural choices if the term "contracts of employment" addressed them alone.

*New Prime*, 139 S. Ct. at 541. As such, the Supreme Court found the § 1 exemption applicable to independent contractors. *Id* at 541, 544.

However, the Supreme Court in *New Prime* considered only whether the plaintiff's contracts with the defendant company allowed for the § 1 exemption to apply where the parties already agreed that an independent-contractor relationship existed between them, and that plaintiff individually qualified as a transportation worker. *See New Prime*, 139 S. Ct. at 536, 539. The Supreme Court was not tasked with, and has not yet addressed, the issue instead posed in this matter—whether an LLC or a corporate entity itself can qualify as a "class of worker" engaged in foreign or interstate commerce. *See Oliveira v. New Prime, Inc.*, 857 F.3d 7, 17 (1st Cir. 2017) ("[B]ecause the parties do not dispute that [plaintiff] is a transportation worker under § 1, we need not address whether an LLC or other corporate entity can itself qualify as a transportation worker."); *see also Southwest Airlines*, 142 S. Ct. at 1790, 1793 (finding

---

1788-89. "Put another way, transportation workers must be actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce." *Id.* at 1790 (internal quotation marks omitted).

REPORT AND RECOMMENDATION - 9

individual airline ramp supervisor was a transportation worker involved in interstate commerce for § 1 exemption under the FAA).

Plaintiffs have not provided any authority answering that question in the affirmative. In fact, since *New Prime*, no court to this Court's knowledge has found that a business entity properly belongs to the relevant "class of workers" or that a commercial contract between such entities can otherwise be construed as a "contract of employment" for the § 1 exemption to apply. *See R&C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*, 447 F.Supp.3d 339, 347 (W.D. Pa. 2020) ("The Agreement here is a commercial contract between two business entities. It cannot reasonably be construed as a contract of employment governing 'work by workers.'"); *see also Carter O'Neal Logistics, Inc. v. FedEx Ground Package Sys., Inc.*, 2020 WL 13111153, at *3 (W.D. Tenn. Mar. 19, 2020) ("*New Prime* . . . does not stand for the proposition that the FAA exception for transportation workers applies to corporate entities."); *see also D.V.C. Trucking, Inc. v. RMX Glob. Logistics, Inc.*, 2005 WL 2044848, at *3 (D. Colo. Aug. 24, 2005) (declining to apply § 1 exemption where business entity plaintiff was not "an employed 'transportation worker' engaged in interstate commerce, but rather . . . a business corporation.").

Plaintiffs seek to analogize the instant case to *Canales v. Lepage Bakeries Park St. LLC*, 2022 WL 952130 (D. Mass. Mar. 30, 2022), because the individual owner-delivery driver plaintiffs in that case were found exempt from the FAA under § 1 despite having entered into their arbitration agreement via their distribution company. (Pls.' Resp. at 7.) That case is distinguishable as the district court found the individual owner-delivery driver plaintiffs themselves were transportation workers within the meaning of the § 1 exemption, and thus, exempt from the FAA. *Canales*, 2022 WL 952130 at *7. Since the owner-delivery driver plaintiffs in that case individually signed arbitration agreements, and filed suit in their individual

REPORT AND RECOMMENDATION - 10

capacity, the district court did not address the issue of whether the distribution company the plaintiffs worked for itself qualified as a transportation worker nor whether it had a contract of employment.[5] *See id.* at *2 ("Although the Distributor Agreement is signed on behalf of T&B, [plaintiffs] each also signed a Personal Guaranty . . . certifying that each of them, as individuals . . . is subject to the Arbitration Agreement in the Distributor Agreement[.]" (internal quotations omitted)).

Plaintiffs also argue that *Citizens United v. FEC*, 558 U.S. 310 (2010) requires recognizing Plaintiffs as persons with the same rights as individuals under the law, and not as business entities, is also unavailing. (Pls.' Resp. at 7-8.) While *Citizens United* recognized corporations' First Amendment rights, it clearly does not supply authority that Congress intended the § 1 exemption to include agreements between business entities and not only "contracts of employment of . . . any other class of workers engaged in foreign or interstate commerce." *See* 9 U.S.C. § 1. The Court finds no reasonable way of extending *Citizens United*'s holding to this case involving whether a business entity qualifies as a transportation worker not subject to arbitration under § 1 exemption.

Ultimately, in this case, there is no dispute that Plaintiffs are each independently owned and operated businesses that entered into the Agreement to fulfill delivery orders with Defendants. (*See* McCabe Decl., Ex. A at § 10, Ex. B at § 10; Whitfield Decl. at ¶ 2 ("Fli-Lo is a transportation and logistics company, which entered into a contract to deliver packages for

---

[5] Likewise, Plaintiffs' citation to *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450 (3d Cir. 1953), and *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am., Local Div. 1210 v. Pa Greyhound Lines, Inc.*, 192 F.2d 310 (3d Cir. 1951), is also inapposite. (*See* Pls.' Resp. at 7 n.9.) Both of those cases applied the § 1 exemption to collective bargaining agreements between labor unions and employers; neither of those cases supply authority that the § 1 exemption applies to business entities.

REPORT AND RECOMMENDATION - 11

1  Defendants in the Sacramento, California area from October 2019 to May 2021 as part of
2  Defendants' [DSP Program]."); *see also* Wiles Decl. at ¶ 2; Ali Decl. at ¶ 2.) Plaintiffs have
3  failed to provide authority to this Court demonstrating that the § 1 exemption is appropriate to
4  what largely appears to be a commercial agreement between business entities for the delivery of
5  goods. Based on the historical basis of the § 1 exemption, the Supreme Court's interpretation of
6  the plain language of "contract of employment" and "class of workers engaged in foreign or
7  interstate commerce" under § 1, and the federal district court cases that have since analyzed this
8  issue with respect to business entities, this Court similarly concludes the FAA exemption does
9  not apply to Plaintiffs.

     ii.   Unconscionability

11  Next, Plaintiffs argue that the arbitration provision in the Agreement is unenforceable
12  because it is unconscionable and contrary to public policy under Washington law. (Pls.' Resp. at
13  15-16.) Specifically, Plaintiffs argue the arbitration provision was procedurally unconscionable
14  because: (1) the Agreement was an adhesion contract; (2) Plaintiffs lacked a meaningful choice
15  with regard to the arbitration provision due to open-ended modification in favor of Defendants
16  under threat of termination from the DSP Program; and (3) Defendants did not provide
17  reasonable opportunities to inquire about the Agreement. (*Id.* at 16-19.) Plaintiffs further contend
18  the arbitration provision, and the Agreement's other clauses affecting it, was substantively
19  unconscionable because it violates Washington state public policy and is overly one-sided. (*Id.* at
20  19-24.)

21  Notably on this particular issue, in *Rent-A-Ctr*, the Supreme Court held that a party
22  contesting the enforceability of an arbitration agreement must challenge "the delegation
23  provision *specifically*" and not just the arbitration agreement as a whole to properly level an

REPORT AND RECOMMENDATION - 12

unconscionability challenge.[6] 561 U.S. at 71 (emphasis added). The Supreme Court found that the party seeking to make an enforceability challenge to an arbitration provision must at least reference the delegation clause in its opposition to a motion to compel arbitration. *Id.* at 71-73 (noting plaintiff failed to specifically challenge delegation clause where opposition brief "nowhere . . . even mention[ed] the delegation provision.") Therefore, for a court to consider an unconscionability challenge to an arbitration provision, the challenging parties' argument must be "specific to the delegation provision" in the arbitration provision itself. *Id.* at 73.

Likewise, in *Brennan*, the Ninth Circuit rejected an unconscionability challenge to an arbitration provision on similar grounds. 796 F.3d at 1132-33. In that case, the Ninth Circuit noted the plaintiff's agreement included three nested agreements: (1) the plaintiff's overall employment agreement; (2) an arbitration clause included in the employment agreement; and (3) the delegation clause in the arbitration clause ("i.e., incorporation of the AAA rules which delegates enforceability questions to the arbitrator"). *Id.* at 1133. The Ninth Circuit noted the last two agreements were separate agreements to arbitrate different issues, and reasoned the arbitration provision at issue with regard to plaintiff's unconscionability challenge was the delegation clause because "that is the arbitration agreement [defendant] seeks to enforce." *Id.* Because the plaintiff in *Brennan* had failed to "make any arguments specific to the delegation provision," the Ninth Circuit concluded *Rent-A-Ctr* foreclosed its review of plaintiff's unconscionability challenge due to the parties' "clear and unmistakable" delegation of that question to the arbitrator.[7] *Id.* (citing *Rent-A-Ctr*, 561 U.S. at 73-74).

---

[6] The "delegation provision" in an arbitration provision is the precise "agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr*., 561 U.S. at 68.

[7] "[T]o have the federal court address an unconscionability challenge, [plaintiff] would have had to argue that the agreement to delegate to an arbitrator his unconscionability claim was *itself* unconscionable." *Brennan*, 796 F.3d at 1133 (emphasis in original).

REPORT AND RECOMMENDATION - 13

1    Here, because Plaintiffs' unconscionability challenges largely go to the enforceability of
2 the entire Agreement, and are not wholly specific to the delegation clause in the arbitration
3 provision itself, the Court finds that the question of unconscionability of the arbitration provision
4 remains for the arbitrator to decide. Here, the delegation clause in the Agreement's arbitration
5 provision provides that "ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE
6 RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT." (McCabe Decl.,
7 Ex. A at § 13, Ex. B at § 13 (emphasis in original).) The Agreement's arbitration provision
8 further provides that any arbitration shall be administered by the AAA rules and procedures. (*Id.*)

9    For this Court to hear Plaintiffs' challenges, Plaintiffs' arguments would need to have
10 explicitly challenged the delegation provision in the Agreement itself—that is, the power to the
11 arbitrator to determine the validity of the arbitration clause as unconscionable or its provision of
12 the AAA rules—and not various aspects of the arbitration provision or Agreement. *See*
13 *Rent-A-Ctr*, 561 U.S. at 72-73; *Brennan*, 796 F.3d at 1133. Instead, Plaintiffs' unconscionability
14 challenges raise issues as to the whole of the arbitration provision in the Agreement, and at
15 times, to the entirety of the parties' Agreement itself. (*See* Pls.' Resp. at 16-24.) Plaintiffs also
16 fail to meaningfully explain or distinguish how such challenges would not render the entire
17 Agreement itself procedurally or substantively unconscionable, an issue that would otherwise be
18 delegated to the arbitrator, and not just the arbitration provision contained therein. *See Wolfire*
19 *Games, LLC v. Valve Corp.*, 2021 WL 4952220, at *2 (W.D. Wash. Oct. 25, 2021) (finding
20 question of unconscionability remained for arbitrator where Plaintiffs failed to "meaningfully
21 challenge the delegation provision as unconscionable").

22    Therefore, the Court finds that it need not reach Plaintiffs' unconscionability challenges
23 because Plaintiffs failed to specifically level them at the delegation clause in the arbitration

REPORT AND RECOMMENDATION - 14

provision in the parties' Agreement. As such, any question as to the arbitration provision's enforceability on the basis of unconscionability remains for the arbitrator.

### C. Scope of the Arbitration Agreement

Where there is "clear and unmistakable" evidence that the parties delegated threshold arbitrability questions to an arbitrator in their agreement, then whether the agreement covers a particular controversy must be determined by the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529-30 (2019) ("[A] court may not decide an arbitrability question that the parties have delegated to an arbitrator."); *see Brennan*, 796 F.3d at 1130-32 (explaining that "one of [the AAA rules] provides that the arbitrator shall have the power to rule on jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement"); *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

As noted above, any questions of arbitrability based on Plaintiffs' specific claims should go to the arbitrator because of the existence of a valid agreement to arbitrate and the parties' incorporation of the AAA rules. The parties' inclusion of the AAA rules in the Agreement demonstrates "clear and unmistakable" evidence the parties intended to delegate the arbitrability question to an arbitrator. *See Brennan*, 796 F.3d at 1130; *Oracle Am., Inc*, 724 F.3d at 1074. Furthermore, Plaintiffs did not argue that any of their specific claims at issue were not within the scope of the arbitration provision. (*See* Pls.' Resp.)

Because the Court recommends that Defendants' Motion be granted as there is a valid agreement to arbitrate, and because the parties' Agreement covers the dispute at issue, dismissal

REPORT AND RECOMMENDATION - 15

of this action is appropriate. *See Johnmohammadi*, 755 F.3d at 1074. Accordingly, the Court recommends Plaintiffs' claims be dismissed without prejudice in favor of arbitration.

### IV.    CONCLUSION

For the foregoing reasons, this Court recommends Defendants' Motion (dkt. # 31) be GRANTED, and that this case be DISMISSED without prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 23, 2022.**

The Clerk is directed to send copies of this Order to the parties and to the Honorable Ricardo S. Martinez.

Dated this 8th day of August, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge